Burnes, J.
This action is before this Court on the plaintiff, Bowne of Boston, Inc.’s (“Bowne”), request for a preliminary injunction. Bowne argues that a former employee, defendant Ian Levine (“Levine”), violated the terms of a non-solicitation agreement signed by Levine while in the employ of Bowne. Bowne asks this Court to restrain Levine from violating the terms of the agreement. Levine opposes the motion, arguing that the agreement does not protect a legitimate business interest of Bowne, that the agreement is unreasonable in scope, and that the requirements for a grant of a preliminary injunction have not otherwise been met. For the reasons set forth below, Bowne’s Motion for a Preliminary Injunction is ALLOWED.
*686 I. BACKGROUND
The facts were gathered from Bowne’s verified complaint, the parties’ memoranda and supporting affidavits.
Bowne is a Massachusetts corporation engaged in the business of providing financial printing, corporate printing, multimedia multilingual document-building solutions, and other printing services. Defendant Merrill Corporation (“Merrill”), Levine’s current employer, is a direct competitor of Bowne, providing essentially the same printing services. Both companies serve entities in the corporate world, providing their printing services for public offerings, mergers and acquisitions, and corporate compliance needs. In addition to offering similar services, both Bowne and Merrill use substantially similar printing technology.
Levine became an employee of Bowne on December 16, 1985. Initially hired as a salesman, Levine eventually attained the status of vice president of sales. As a member of Bowne’s sales team, Levine was responsible for servicing Bowne’s existing clients and generating new business. In an effort to retain old clients and develop new ones, Bowne, like its competitors, expected its sales representatives to entertain old and prospective clients. At Bowne, Levine was provided with an unlimited expense account for those purposes. By virtue of his position at Bowne, Levine entertained clients and potential clients by taking them out to dinner, to theatrical productions, to professional sporting events, and to Foxwoods Casino in Connecticut.
On April 17, 1994, in exchange for Bowne’s agreement to establish a minimum level of annual compensation for Levine, he signed an Employee Non-competition Agreement (“Agreement”). The Agreement included a non-solicitation clause that reads as follows:
[W]ith respect to the two years immediately after your employment terminates for any reason, you agree not to help a competitor of Bowne solicit the business of any customer, client (such as an outside attorney, investment banker or other professional adviser) or individual who worked for a customer or client, who was assigned to you as a potential source of business or for whom you received sales credit during the two years prior to your leaving Bowne. Nor will you, during those two years after your employment terminates, use or permit the use in competition with Bowne of either your personal relationship with such customer, client or individual or the information you acquired during your employment about any of them. However, you will not be prohibited otherwise from accepting employment with a competitor of Bowne.
On September 22, 1997, Bowne provided its sales staff, including Levine, with a list of 23 current clients whose accounts had been dormant for a significant period. In anticipation of the closing of Bowne’s fiscal year on October 31, 1997, Bowne asked its staff, including Levine, to evaluate the dormant accounts, to close the accounts not likely to generate new business, and to identify accounts likely to generate new business. During Levine’s evaluation of the list, he instructed Joseph King, Customer Service Manager, to keep the account of Focal, Inc. (“Focal”) open in expectation of future business. However, two days later, on September 24, 1997, Levine instructed Mr. King to close Focal’s account.
On October 6, 1997, Levine resigned from Bowne to accept the position of President of Merrill’s New England operations. As President, Levine assumed sole responsibility for the management of Merrill’s New England operations, overseeing and having ultimate responsibility for sales representatives in Merrill’s New England offices.
On October 16, 1997, Bowne learned that Focal had become a client of Merrill.
II. DISCUSSION
To obtain preliminary injunctive relief, Bowne must satisfy a threefold inquiry: (1) that it has a reasonable likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunctions is not granted; and (3) that the harm Bowne will suffer if the injunction is denied outweighs the injury the defendants will suffer if the injunction is granted. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). See also, T & D Video, Inc. v. Revere, 423 Mass. 577, 580 (1996); Town of Brookline v. Goldstein, 388 Mass. 443, 447 (1993).
1. Likelihood of success on the merits.
An employer may enforce the terms of a non-solicitation agreement with a former employee when it demonstrates that the agreement (a) is necessary to protect a legitimate business interest of the employer, (b) is supported by consideration, (c) is reasonably limited in all circumstances, including time and space, and (d) is otherwise consonant with public policy. Whittinsville Plaza v. Kitseas, 378 Mass. 85, 102-03 (1962). See also, Blackwell v. E.M. Helides, Jr., Inc., 368 Mass. 225, 228 (1975); All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974).
A. Necessary to protect a legitimate business interest.
The appellate courts of this Commonwealth have recognized goodwill as a legitimate business interest. New England Canteen Service, Inc. v. Ashley, 372 Mass. 671, 674 (1977); New England Tree Expert Co. v. Russell, 306 Mass. 504 (1940); Kroeger v. Stop & Shop Cos., Inc., 13 Mass.App.Ct. 310, 316 (1982), review denied 386 Mass. 1102 (1982). The covenant is, however, unenforceable if its application protects the employer from ordinary competition. Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280 (1974); Richmond Bros., Inc. v. Westinghouse Broad. Co., 357 Mass. 106 (1970).
*687 In its verified complaint, Bowne alleges that its goodwill has been damaged by the defendants and that because of Levine’s position at Merrill, its goodwill remains vulnerable to further harm. As a threshold matter, therefore, Bowne must establish that its business involves goodwill, and that the goodwill belongs to Bowne. All Stainless, 364 Mass. at 779.
After careful review of the facts and relevant law, this Court holds that the corporate printing business does indeed involve goodwill and that the goodwill belongs to Bowne. Employer goodwill has been defined as the employer’s positive reputation in the eyes of its customers or potential customers. Marine Contractors Co., 365 Mass. at 287-89. Goodwill is generated by repeat business with existing customers or by referrals to potential customers. Id. Bowne has shown that it has nurtured goodwill, through the work of Levine, in the customers covered by the nonsolicitation agreement. Bowne provided Levine with an unlimited expense account to entertain clients on behalf of the company. Lastly, Bowne hired Levine to use his knowledge, skill and personality to cultivate relationships with clients on behalf of Bowne. In sum, the goodwill generated with respect to clients first introduced to Levine by Bowne, and new clients retained by Levine while employed at Bowne, belongs to Bowne.
Furthermore, Levine is in a position to appropriate Bowne’s goodwill. See All Stainless, 364 Mass. 779-80 (the court must determine whether the former employee is in a position to appropriate the employer’s goodwill). An employee is in a position to appropriate an employer’s goodwill when the employee’s close association with the former employer’s customers might cause the customers to associate the service or products at issue with the employee, rather than with the employer. Id. at 780 citing Blake, Employee Agreements not to Compete, 73 Harv.L.Rev. 625, 658-59 (1960). Both parties agree that it was Levine’s responsibility to entertain clients, and to use his personality and skill to get further business from existing clients and to solicit new clients. In sum, it can be inferred that many clients may have inadvertently associated Bowne’s products with Levine. However, this Court cannot overlook the fact that Levine’s entertainment expenses were paid for by Bowne and that Bowne hired Levine to use his skill and personality on behalf of Bowne.
This case is factually similar to Marine Contractors Co. v. Hurley, 365 Mass. 280 (1974), and All Stainless, Inc. v. Colby, 364 Mass. 773 (1974). In Marine Contractors, the Supreme Judicial Court held that an employer’s goodwill is threatened when a former employee accepted work from past and then current customers of a former employer in the marine repair work industry. Marine Contractors, 365 Mass. 288-89. Further, in All Stainless, the Supreme Judicial Court held that an employer’s goodwill is threatened when a salesman would be calling on his former employer’s customers to solicit purchases on behalf of a new employer. All Stainless, 364 Mass. at 774-77. The nonsolicitation agreement in this case goes no further than to protect Bowne’s goodwill from the threat identified by the Marine Contractors and All Stainless Courts. By virtue of his various sales positions at Bowne, Levine was able to develop business relationships and contacts with the Bowne’s clients. In addition to having access to customer lists, Levine was vice president of sales for a period before his resignation. Thus, there is a significant likelihood that Levine would have the ability to deflect clients from Bowne to Merrill. In light of the foregoing, this Court holds that the nonsolicitation agreement is necessary to protect Bowne’s goodwill.
B. Consideration.
There is no question that the nonsolicitation agreement was supported by consideration. Levine signed the agreement in exchange for Bowne’s agreement to establish a minimum level of annual compensation. Thus, this is a case where the employer provided some clear additional benefit to the employee. See, e.g., Marine Contractors Co., 365 Mass. at 285-86.
C. Reasonable in all circumstances, including time and space.
A nonsolicitation agreement will be enforced only if it is reasonable, based on all of the circumstances. All Stainless, 364 Mass. at 778; New England Tree Expert Co., Inc., 306 Mass. at 510. A determination of the reasonableness of the restrictive covenant requires a fact-sensitive inquiry. Novelty Bias Binding Co. v. Shevrin, 342 Mass. 714, 717 (1961); Sherman v. Pfefferkorn, 241 Mass. 468, 474 (1922). If a covenant is too broad in space, time or any other respect, it will be enforced only to the extent that it is reasonable and to the extent that it is severable for the purposes of enforcement. All Stainless, 364 Mass. at 778; Novelty Bias Binding Co., 342 Mass. at 718; Cedric G. Chase Photographic Labs, Inc. v. Hennessey, 327 Mass. 137, 139 (1951). Any restraint must be consistent with the protection of the goodwill of the employer. All Stainless, 364 Mass. at 779.
The defendants challenge the non-solicitation agreement first with respect to its temporal sweep, arguing that the agreement is unreasonable, either rendering it unenforceable, or mandating a narrowing of its scope. In deciding the reasonableness of a restriction as to time, a court must consider (1) the nature of the plaintiffs business, (2) the type of employment involved, (3) the situation of the parties, (4) the employer’s legitimate business interests, and (5) the employee’s right to work and earn a livelihood. All Stainless, 364 Mass. at 778. This Court finds nothing in the facts indicating that the two year duration of the nonsolicitation agreement is unreasonable. Massachusetts courts have consistently enforced covenants of up to two years, even as great as five years duration, if they are otherwise reasonable under the circum *688 stances. Id. at 779; Richmond Bros., 357 Mass. at 110-11.
To bolster its argument that the agreement is unreasonable in scope, the defendants point this Court to the clause in the agreement prohibiting Levine from using any “personal relationship” with any “customer, client or individual,” “who was assigned to [Levine] as a source of business or for whom [he] received sales credit during the two years prior to ... leaving Bowne” or any “information . . . acquired during [Levine’s] employment about any of them.” This Court does not agree with defendants’ view that the foregoing language is too broad. Rather, the provision further protects Bowne’s legitimate interest in its goodwill. The provision specifically precludes Levine from using in competition with the Bowne the “personal relationship[s]” developed at Bowne’s expense. Further, enforcement of the agreement will not unreasonably diminish Levine’s right to work and earn a livelihood. The Agreement specifically allows him to work for a competitor, thereby permitting him to use, as the law allows, the skills and experience he developed while at Bowne. In addition, presumably, the pool of potential clients in the industries served by Bowne and Merrill is enormous. While enforcement of the agreement will obviously reduce the pool of potential clients available to Levine and Merrill, the reduction does not rise to a level of being unreasonable. Levine’s right to work and earn a livelihood, therefore, is not unreasonably curtailed by enforcement of the agreement.
D. Public policy.
A covenant not to compete is enforceable to the extent it is consonant with the public interest. Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 501 (1986). It is in the public interest to allow an individual to participate in his or her trade freely and without monopolization. Woolley’s Laundry v. Silva, 304 Mass. 383, 387 (1939).
The defendants offer no reason why enforcement of the agreement would violate public policy, and this Court can think of none.[1]
2. Irreparable harm
Irreparable harm is a loss of rights that cannot be vindicated should the party seeking an injunction prevail after a full hearing on the merits. Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990).
As indicated above, principally at issue here on the part of Bowne is the loss and potential loss of goodwill as a result of the activities of Levine. In this Commonwealth, the loss of goodwill has been recognized as being particularly hard to quantify, giving rise to the need for equitable relief. See, e.g., Kroeger, 13 Mass.App.Ct. at 322.
3. Whether the harm Bowne will suffer if the injunction is denied outweighs the injury the defendants will suffer if the injunction is granted.
Lastly, the balance of harm weighs in favor of Bowne. As discussed above, Bowne stands to suffer a loss of goodwill from the close association between Levine and Bowne’s clients. On the other hand, the grant of the preliminary injunction does not foreclose Levine or Merrill from pursuing any number of potential clients.
ORDER
Based upon the foregoing reasons, it is hereby ORDERED as follows:
That defendant Ian Levine is preliminarily enjoined, until October 6, 1999, from soliciting business, directly or indirectly, personally or through any other person or entity, from any customer, client or individual who worked for a customer or client, who was assigned to Mr. Levine by Bowne as a potential source of business or for whom he received sales credit during the two years prior to his leaving Bowne.

 In the course of researching this opinion, this Court could find no Massachusetts case in which a court struck down a noncompetition or nonsolicitation clause because it jeopardized public policy, except in those cases dealing with agreements between doctors, lawyers or securities brokers. See, e.g., Marine Contractors Co., 365 Mass. at 288-289; Alexander & Alexander, 21 Mass.App.Ct. at 501. Compare, G.L.c. 112, Sec. 12X (1997 ed.); S.J.C. Rule 3:07, DR 2-108(A); Meehan v. Shaughnessy, 404 Mass. 419, 431 (1989); Merrill Lynch, Pierce, Fenner & Smith Inc. v. DeForest No. 94-6784, slip op. at 4 (Suffolk Super. Ct. Dec. 23, 1994) (Quinlan, J.).