Doerfer, J.
This action is before the Court pursuant to requests by both parties for injunctive relief relating to a noncompetition ¿greement. Plaintiff Theodore Browne (“Browne”), a former employee of Merkert, seeks a judgment declaring that the non-compete agreement he entered with Merkert Enterprises, Inc. (“Merkert”) is void and unenforceable and requests that the Court enjoin Merkert from enforcing the agreement. He wishes to accept employment with Pezrow New England, Inc. (“Pezrow”) a competitor of Merkert. Browne argues that he signed the agreement under duress, the agreement does not protect a legitimate business interest of Merkert, and that the agreement is unreasonable in scope. Merkert has responded by requesting that the Court enforce the agreement and enjoin Browne from engaging in conduct that violates the agreement. Merkert argues that the agreement protects its legitimate business interest in preserving its good will and confidential information, that the agreement is reasonable in scope and that Merkert will suffer irreparable harm if the agreement is not enforced. The issues set forth in the opposing motions are the same. For the reasons stated herein, the Court finds that Merkert has a reasonable likelihood of establishing at trial that the agreement is valid and enforceable. Furthermore, Merkert has satisfied the other conditions justifying the issuance of a preliminary injunction. Merkert’s motion for a preliminary injunction is ALLOWED[1] and Browne’s motion is DENIED.
BACKGROUND
The facts set forth in the submissions by the parties are as follows:
Merkert is a Massachusetts corporation in the business of providing brokerage services to various manufacturers of goods and foods. Merkert assists manufacturers (also referred to as Principals) in marketing their products to retailers such as supermarkets and drug stores.[2] The nature of the business requires Merkert to develop strong relationships with both the Principals and the retail customers.
Browne was employed by Merkert from 1984 until March 1998. In 1994, Browne became the Business Manager for Unilever, an important Principal of Merkert since 1983. In October of 1996, he was appointed Director of Merkert’s Health and Beauty Care/General Merchandise (HBC/GM) division. In December of 1996, Browne was promoted to Vice President of HBC/GM. Browne’s duties included, inter alia, maintaining and targeting Principal relations, maintaining relationships with retailers, developing and planning sales and determining services for price setting. Browne continued to act as Business Manager to Unilver when he became Vice President of HBC/GM. When Browne was promoted he was required to sign a noncompetition/nondisclosure agreement. In connection with his promotion and with the expectation that he sign the agreement, Merkert gave Browne a 14.8% raise. After consulting with his attorney, Browne proposed some revisions to the agreement. Some changes were made and Browne signed the agreement. The agreement provides, inter alia, as follows:
13. Restrictive Covenant
(b) The Employee covenants and agrees that, during the period of his or her employment by the Employer and for a period of six (6) months following the termination of such employment . . . the Employee will not, directly or indirectly, individually or as a consultant, advisor, agent, partner, employee, officer, director, stockholder, trustee, beneficial owner, creditor or in any other capacity,
(i) engage in a Restricted Business . . .
. . . the term “engage in Restricted Business” shall mean:
“conduct, or become associated with or have any financial interest in any individual or entity that is engaged in, any business which is competitive with (1) a business conducted by the Employer . . . within any state where a division of the employer to which the Employee has been assigned conducts such business ... , or (2) any *310 business known to the Employee to be identified in the Employer’s business strategy for commencement by the Employer within two (2) years from the Employee’s termination date, within any area so identified by the Employer."
(ii) contact or otherwise solicit any employee of the Employer with the intention or effect of encouraging such employee to terminate his or her employee to terminate his or her employment with the Employer; or
(iii) contact or otherwise solicit any principal, supplier or customer of the Employer (or of any such principal) with which the Employee has had contact, on behalf of the Employer, during the period of the Employee’s employment with the Employer, with the intention or effect of encouraging such principal, supplier or customer to terminate or reduce the volume of its business with the Employer (or such principal) or to place any portion of such business elsewhere.
14. Confidential relationship
The Employee acknowledges and agrees that all conversations, correspondence, records, files, customer lists, price lists, sales date, know-how, business confidences and other information ... of the Employer, its Principals, packers, suppliers, affiliates, and its and their customers are confidential information of the Employer. (The parties agree that confidential information does not include the general skill and knowledge that the Employee acquired during the course of his employment with the Employer.) The Employee agrees that during the period of his or her employment by the Employer and at all times thereafter, he or she shall not directly or indirectly use any such information for his or her own benefit or divulge, disclose or communicate any such information, not previously made public or known to the recipient, to any person, firm or entity without prior written authorization of the Employer. The Employee further agrees that at the termination of his or her employment with the Employer ... he or she will immediately deliver to the Employer (i) all originals and copies of documents then in the possession or under the control of the Employee containing any such confidential information, and (ii) all other property belonging to the Employer then in the possession or under the control of the Employee.
On February 9, 1998, Browne submitted a letter of resignation to Merkert. Browne wishes to work for Pezrow, a direct competitor of Merkert. Merkert contends that Browne would be in violation of the non-compete/nondisclosure agreement if he were to accept employment at Pezrow. Pezrow has withdrawn its offer of employment to Browne pending resolution of this matter. Browne requests, at this time, that the agreement be declared void. Merkert, in turn, requests that the agreement be enforced.
DISCUSSION
A preliminary injunction is warranted if the moving party establishes both a likelihood of success on the merits of the claim, and a substantial risk of irreparable harm in the absence of an injunction. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). If these factors are established, the Court must balance them against the harm that the injunction will inflict on the opposing party, including impact on the public interest. See T&D Video, Inc. v. City of Revere, 423 Mass. 577, 580 (1996).
The inquiry should not focus on determining the “raw amount of irreparable harm” each parly might suffer, “but rather the risk of such harm in light of the parly’s chance of success on the merits.” Packaging Industries Group, Inc. v. Cheney at 617.
A. Likelihood of Success on the merits.
A noncompetition/nondisclosure agreement is enforceable against a former employee if it is “necessary to protect a legitimate business interest of the employer, (b) is supported by consideration, (c) is reasonably limited in all circumstances, including time and space, and (d) is otherwise consonant with public policy.” Bowne of Boston, Inc. v. Levine & Merrill Corp., 7 Mass. L. Rptr. 685, 1997 WL 781444 (Mass. Super.), citing Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 102-03 (1979); Blackwell v. E.M. Helides, Jr, Inc., 368 Mass. 225, 228 (1975); All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974).
In the present case, Merkert argues that the agreement is necessary to protect its goodwill and confidential information, that it is supported by consideration, it is reasonable in scope and it is consonant with public policy. In contrast Browne argues that the agreement is void because it was signed under duress, it covers information that was not adequately protected as confidential, it does not legitimately protect Merkert’s goodwill, it was not supported by adequate consideration, it is unreasonable in time and space, and that it is not consonant with public policy.
1. Duress
To establish the contract was obtained by duress, Browne must demonstrate that he was “in fact coerced and deprived of his freedom of will by a wrongful influence which [impelled] him to enter into an agreement . . . that he would not have entered into ... in the exercise of his freewill and deliberate, independent judgment.” See Rosenbloom v. Kaplan, 273 Mass. 411, 416 (1930). Browne alleges that he was told that,his continued employment required that he sign the non-compete/nondisclosure agreement and that the agreement would not be enforced unless he attempted to pirate other employees. In addition, he contends that other similarly situated employees did not have to sign such an agreement and that if he had known that others were not required to sign agreements he would not have signed.
*311 Merkert denies that Browne was told that the contract would not be enforced. In light of the detailed negotiations for the provisions of the agreement, it seems unlikely that Merkert represented that the agreement would not be enforced. Browne raises issues that should be resolved at trial. For the purposes of the request for injunctive relief, Merkert has established a likelihood of success on the merits regarding the issue of duress. The requirement that Brown sign the agreement was consistent with his having received a promotion. Further, Browne consulted an attorney and negotiated the terms of the agreement. There is nothing on the record to suggest that Browne was subjected to duress in a legal sense. Thus, the Court will not declare the agreement void on that basis.
2.Confidential Information
To determine whether information is confidential, Massachusetts Courts look to the facts of each case in light of the following factors set forth in Jet Spray Cooler, Inc. v. Crampton:
(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 840 (1972); Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 49 n.5 (1998). Browne argues that the agreement is unenforceable because the information Merkert seeks to protect is not actually confidential. Browne alleges that Business Managers, who were not required to sign agreements, had access to the information Merkert seeks to protect. Accordingly, Browne argues that Merkert is not entitled to the protection of the agreement because it did not adequately protect the confidentially of the information at issue.
Merkert has submitted an affidavit contradicting Browne’s argument demonstrating that Merkert did take steps to ensure the confidentiality of the information at issue. Documents and information on Principals were identified as confidential, kept in isolated areas and limited to review by certain employees. The fact that not every employee was required to sign an agreement is not dispositive of the confidentiality issue. See New England Overall Co., Inc. v. Woltmann, 343 Mass. 69, 78 (1961) (where the employer guarded the secrecy of its costs and strategy, a former employee was properly enjoined from disclosing such information even though he did not sign a written nondisclosure agreement). Here, the information on price setting, sales, and financial condition of the Principals was not likely to be known outside of Merkert, the information would be highly valuable to competitors, and Merkert has spent significant time and money acquiring the information by cultivating close relationships with the Principals. The Court concludes that the information Merkert seeks to protect is likely to be confidential. Preservation of confidential information is a legitimate business interest. See Marine Contractors Co, Inc. v. Hurley, 365 Mass. 280, 287 (1974). Merkert has established a likelihood of success on the merits with respect to this issue.
3.Goodwill
Massachusetts Courts consider goodwill to be a legitimate business interest that an employer may protect with a covenant not to compete. Kroeger v. Stop & Shop Cos., Inc., 13 Mass.App.Ct. 310, 316, review denied 386 Mass. 1102 (1982). This court adopts the analysis of goodwill articulated by Judge Burnes in Bowne of Boston, Inc. v. Levine & Merrill Corp., 7 Mass. L. Rptr. 685, 1997 WL 781444, *2 (Mass. Super.), and finds that it is likely that the food brokerage business involves goodwill and that the goodwill belongs to Merkert. Merkert trained Browne and gave him accounts that enabled him to cultivate strong relationships with Merkert’s Principals. Based on the nature of the business and the fact that Browne had close associations with Merkert’s customers in his capacity as Business Manager and Vice President, there is a strong likelihood that Browne will injure Merkert’s goodwill if he is allowed to work immediately for a competitor of Merkert. Accordingly, the non-compete/nonsolicitation agreement is likely to be necessary to protect Merkert’s goodwill and confidential information.
4.Consideration
Browne contends that the agreement is void because it is not supported by adequate consideration. It is undisputed that Browne received a promotion and a raise in connection with his signing the agreement. This additional benefit to Browne satisfies the requirement for consideration. It is not likely that, after a trial, the Court would declare the agreement to be void for lack of consideration.
5.Reasonableness
A valid noncompetition agreement must be reasonable in duration and geographic scope. All Stainless, supra, 364 Mass. at 778; See Pettingell v. Morrison, Mahoney & Miller, 426 Mass. 253, 256 (1997). In determining whether the provisions in a covenant not to compete are reasonable and therefore enforceable, “the reasonable needs of the former employer for protection against harmful conduct of the former employee must be weighed against both the reasonableness of the restraint imposed on the former employee and the public interest. All Stainless, supra at 778.
Browne argues that the provisions in the agreement relating to geographic scope and the six month time period are unreasonably broad. The agreement covers *312 the geographic area in which Brown was assigned and prohibits Browne from working for a competitor for a period of six months. Specifically Browne may not engage in a Restricted Business which means conduct or association with an entity that is engaged in business which is competitive with any (1) business conducted by Merkert within any state in which there is a division of Merkert to which Browne was assigned, or (2) any business known to Browne to be identified in Merkert’s business strategy for commencement by Merkert within two years from Browne’s termination date. Further, he may not contact or solicit Merkert employees with the purpose of encouraging Merkert employees to terminate employment with Merkert, or contact principals or customers of Merkert with the intention of encouraging the same to terminate or reduce the volume of its business with Merkert. He shall not disclose, at any time, information that the parties agree is confidential, and he must return all documents and property belonging to the employer.
Although the agreement prohibits Browne from working for a competitor in a brokerage capacity, the time period is short. Browne would not be prohibited from working for a Principal in sales or consulting. Browne is not completely prohibited from exercising his skill in the industry. His right to earn a living is not unreasonably curtailed by this agreement. Moreover, the reasonable needs of Merkert in protecting its goodwill and confidential information outweigh the restraint to be imposed on Browne.
6. Public Policy
A covenant not to compete is enforceable as long as it is consonant with public policy. Analogic Corp. v. Data Translation, Inc., 371 Mass. 643, 647 (1977). As stated previously, this agreement is reasonable in scope and was the product of negotiation. Public policy will not be ill-served by enforcement of this agreement.
B. Irreparable Harm
Based on the foregoing discussion, the Court concludes that Merkert will suffer irreparable harm in the nature of lost goodwill and disclosure of confidential information if the agreement is not enforced. The Court recognizes that the agreement imposes a significant restraint on Browne for six months, however, the balance of harm in light of likelihood on the merits weighs in favor of Merkert.
ORDER
For the reasons stated above, Merkert’s motion for injunctive relief is ALLOWED. It is hereby ORDERED that Browne is enjoined for a period of six months from the date of his termination from:
(1) engaging in a Restricted Business as defined in paragraph 13 of the covenant agreement,
(2) contacting or solicting Merkert’s employees with the purpose of encouraging any Merkert employee to terminate his or her employment with Merkert, or
(3) contacting or soliciting any principal, supplier or customer of Merkert with which Browne has had contact on Merkert’s behalf, with the intention of encouraging such principal, supplier or customer to terminate or reduce the volume of its business with Merkert or such principal or to place any portion of such business elsewhere.
Browne may not, at any time:
(4) use or disclose confidential information, as defined in paragraph 14 of the agreement, without written authorization from Merkert.
Browne must:
(5) return to Merkert all documents and property, as described in paragraph 14.

The Court held a hearing on this matter March 19, 1998, upon return of a short order of notice. No temporary restraining order had entered, but the offer to Browne for new employment had been withdrawn by Pezrow pending resolution of this issue. Thus, the court had before it motions for preliminary injunction.

For example, Merkert markets and distributes goods from manufacturers such as Duracell to retailers such as Stop & Shop and Star Market.