Burnes, J.
This action is before this Court on the plaintiff Borden & Remington Corporation’s (“B&R”) request for a preliminary injunction. B&R argues that its former employee, defendant Thomas J. Banisch (“Banisch”), violated the non-competition and confidentiality provisions of an Employment Agreement entered into by B&R and Banisch in connection with an Asset Purchase Agreement, whereby B&R agreed to purchase assets owned and operated by Banisch for *697 $300,000. B&R asks this Court to enforce the non-competition and confidentiality provisions of the Employment Agreement by issuing a Preliminary Injunction. Banisch opposes the motion, arguing that: (1) B&R breached the Asset Purchase Agreement by not paying the entire $300,000; (2) the non-competition agreement is unreasonable in duration and geography; and (3) the requirements for a grant of a preliminary injunction have not otherwise been met. For the reasons set forth below, B&R’s Motion for a Preliminary Injunction is ALLOWED.

BACKGROUND

The plaintiff B&R, a Massachusetts corporation, is a manufacturer and distributor of industrial chemicals operating in Fall River, Massachusetts. On May 4, 1999, B&R and Banisch, president of Kensington and T.D. Mack, executed an Asset Purchase Agreement and an Employment Agreement. B&R and Banisch agreed to an arrangement whereby Banisch transferred his customer lists, supplier agreements, product lines, returnable plastic drums, and related licenses, permits and agreements relating to such assets, in exchange for $300,000 payable as follows: (i) $100,000 at the closing; (ii) $100,000 on June 4, 1999; and (iii) $100,000 on July 13, 1999. B&R did not purchase capital stock, existing inventory or products, accounts receivable, machinery and equipment, owned or leased real property or other assets.
One of the conditions for B&R’s entering into the Asset Purchase Agreement was Banisch’s contemporaneous signing of an Employment Agreement. The Employment Agreement covers the time period from May 4, 1999 to May 3, 2004, and includes the following pertinent provisions:
Section 9. Confidentiality and Non-competition. In consideration of the mutual promises contained herein, and to preserve the goodwill of [B&R, Banisch] agrees as follows:
(a) [Banisch] will not at any time, directly or indirectly, disclose, divulge or make use of, except as required in connection with the performance of his duties for [B&R], any Confidential Information acquired by him during or in connection with his affiliation with or employment by [B&R].
(c) During the term of this Agreement, or, if this Agreement is terminated earlier pursuant to Section 10, until May 3, 2004, [Banisch] will not, directly or indirectly, individually or as a consultant to, or employee, officer, director, stockholder, partner or other owner of or participant in any business entity, engage in or assist any other person to engage in any business which sells, distributes, trades, barters and otherwise deals in chemicals and chemical products anywhere in Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, New York, New Jersey or Pennsylvania. Notwithstanding the foregoing, it is agreed [Banisch] may be . . . (ii) the owner of an internet business, tentatively called “Chemswap.com" . . .
(d) Prior to accepting or engaging in any other business activity on or before May 3, 2004, [Banisch] agrees to provide written notice to [B&R] and obtain [its] consent to such business activity
(f) [Banisch] acknowledges that a breach of any of the covenants contained in this Section 9 could result in irreparable injury to [B&R] for which there might be no adequate remedy at law, and that, in the event of such a breach or threat thereof, [B&R] shall be entitled to obtain a temporary restraining order and/or a preliminary injunction and a permanent injunction restraining him from engaging in any activities prohibited by this Section 9.
Upon the execution of both agreements, Banisch became a B&R employee. Banisch worked as B&R’s Marketing Director, where his responsibilities included integrating the Purchased Assets into B&R’s business and maintaining and expanding customer and supplier relationships for B&R’s benefit.
On August 12, 1999, B&R terminated Banisch’s employment citing his breach of the Employment Agreement. B&R alleges that Banisch violated the Employment Agreement when he purchased supplies from Ashland Chemical without B&R’s consent. According to the Verified Compliant, B&R alleges that this purchase was evidence of Banisch’s attempt to compete with B&R. B&R did not make the final $100,000 payment to Banisch on July 13, 1999 as agreed in Section 1.03 of the Asset Purchase Agreement. According to the Verified Complaint, B&R alleges that Banisch continues to contact and solicit business from B&R customers in violation of the Employment Agreement.

DISCUSSION

To obtain a preliminary injunction the moving party must demonstrate both a likelihood of success on the merits of the claim, and a substantial risk of irreparable harm in the absence of an injunction. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). If these factors are established, the court must balance them against the harm that the injunction will inflict on the opposing party, including impact on the public interest. See T&D Video, Inc., v. City of Revere, 423 Mass. 577, 580 (1996). The inquiry should not focus on determining the “raw amount of irreparable harm” each party might suffer, “but rather the risk of such harm in light of the party’s chance of success on the merits.” Packaging Industries Group, 380 Mass. at 617.
A. Likelihood of Success on the Merits
An employer may enforce the terms of a non-solicitation agreement with a former employee when it demonstrates that the agreement is (a) necessary to protect a legitimate business interest of the employer, *698 (b) is supported by consideration, (c) is reasonably limited in all circumstances, including time and space, and (d) is otherwise consonant with public policy. Whittinsville Plaza v. Kotseas, 378 Mass. 85, 102-03 (1979). See also Blackwell v. E.M Helides, Jr., Inc., 368 Mass. 225, 228 (1975); All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974).
B&R argues that the agreement is enforceable because it is necessary to protect its goodwill and confidential information, is supported by consideration, is reasonable in duration and geography, and is consonant with public policy. On the other hand, Banisch argues that he was not given access to confidential records and information, that B&R did not pay the full consideration for assets purchased, that the agreement is unreasonable in duration and geography, and that B&R will not suffer immediate and irreparable harm if the injunction is denied.

1.Goodwill

Goodwill is considered a legitimate business interest that an employer is entitled to protect. Kroeger v. Stop & Shop Cos., Inc., 13 Mass.App.Ct. 310, 316, rev. den. 386 Mass. 1102 (1982). Goodwill is the company’s positive reputation in the community, particularly in the eyes of its customers and potential customers. See Bowne of Boston, Inc. v. Levine & Merrill Corp., 7 Mass. L. Rptr. 685, 1997 WL 781444, *2 (Mass.Super.). This is the core of what B&R purchased in this deal: customer, supplier and vendor relationships and the agreements which support them.
Banisch’s close associations with B&R’s new customers and suppliers in his former role as President of Kensington and T.D. Mack coupled with the nature of the business leads the court to find that there is a strong likelihood that Banisch will injure B&R’s goodwill if he is not restrained from violating the non-competition provisions of the Employment Agreement. If Banisch is not restrained from violating the Employment Agreement, he would have a good chance of acquiring back what he sold to B&R without paying for it. The non-competition provisions of the Employment Agreement are necessary to protect B&R’s goodwill.

2.Confidential Information

The following six factors are relevant to the court’s determination of whether information is confidential:
(1) the extent to which the information is known outside of the business;
(2) the extent to which it is known by employees and others involved in the business;
(3) the extent of measures taken by the employer to guard the secrecy of the information;
(4) the value of the information to the employer and to his competitors;
(5) the amount of effort or money expended by the employer in developing the information; and
(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 840 (1972); Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 49 n.5 (1998). Banisch argues that he never received any confidential pricing information and, therefore, could not have violated the confidentiality provision of his Employment Agreement. B&R’s Verified Compliant contradicts Banisch by stating that Banisch, as a member of the management team, did receive a list of B&R’s inventory of chemicals that included the prices of the products in addition to pricing strategies, identities of customers, and B&R’s general marketing plans and strategies. Banisch admits that he received a “slow moving inventory list” which contained pricing and that he also made efforts to engage in business dealings he thought would be of interest to B&R.
Here, the information on prices, pricing strategies, identities of customers, and general marketing plans is not likely to be known outside of B&R. The information would be highly valuable to competitors. Only those in management or sales are given access to this information and they are forbidden from divulging this information to those outside of B&R. The court concludes that the information B&R seeks to protect is likely to be confidential. See Marine Contractors Co. Inv. v. Hurley, 365 Mass. 280, 287 (1974). B&R has established that it is likely to succeed in showing that it is entitled to protect its confidential information.

3.Consideration

Banisch contends that the Employment Agreement is void because he did not receive full consideration under the Asset Purchase Agreement. The mechanism for deter mining whether Banisch is entitled to the final payment is arbitration, as provided in the Employment Agreement. B&R is entitled to a preliminary injunction to protect the status quo pending a decision by the arbitration panel. Certainly Banisch has already received substantial consideration in the amount of $200,000.

4.Reasonableness

“Any covenant restricting competition is to be enforced only to the extent that it is reasonable in time and space, necessary to protect legitimate interests, and not an obstruction of public interest.” Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 498 (1986). The party seeking to enforce the covenant has the burden of proving the existence of the requisite facts and circumstances. New England Canteen Services, Inc. v. Ashley, 372 Mass. 671, 675 (1977).
Banisch argues that the provisions in the Employment Agreement relating to duration and geography are unreasonable. According to the agreement, Banisch is prohibited from conducting business in *699 Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, New York, New Jersey, or Pennsylvania. He is not to conduct chemical business dealings in this geographic area until May 3, 2004. In this case, B&R is likely to be able to prove that the five year time period is reasonable. This time period has been upheld in other cases involving the enforcement of non-competition covenants. Alexander & Alexander, 21 Mass.App.Ct. at 498; Southern New England Ice Co. v. Ferrero, 295 Mass. 446, 447, 450 (1936); Walker Coal & Ice Co. v. Love, 273 Mass. 564, 565, 567 (1931). Both Banisch and B&R were represented by counsel when they entered into the agreements. Wells v. Wells, 9 Mass.App.Ct. 321, 324-325 (1980). Under the Employment Agreement, Banisch may continue to work in the industry as owner and operator of his internet business “Chemswap.com.” Hence, the agreement is enforceable because it does not unreasonably curtail Banisch’s right to earn a living. Moreover, B&R’s reasonable need to protect its goodwill and confidential information outweighs the restraint imposed on Banisch.
4. Public Policy
A covenant not to compete is enforceable to the extent it is consonant with the public interest. Alexander & Alexander, Inc., 21 Mass.App.Ct. at 501. As stated previously, the Employment Agreement is reasonable in scope and was the product of negotiation. Public policy will not be ill-served by enforcement of this agreement.
B. Irreparable Harm
Irreparable harm is a loss of rights that cannot be vindicated should the party seeking an injunction prevail after a full hearing on the merits. Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). In this Commonwealth, the loss of goodwill has been recognized as being particularly hard to quantify, giving rise to the need for equitable relief. Kroeger, 13 Mass.App.Ct. at 322. Furthermore, the parties agreed that a violation of the Employment Agreement would constitute irreparable harm.
Based on the foregoing discussion, the Court concludes that B&R will suffer irreparable harm in the nature of lost goodwill and disclosure of confidential information if the agreement is not enforced.
C. Balance of the Harm
Lastly, the balance of harm weighs in favor of B&R. As discussed above, B&R stands to suffer a loss of goodwill and risks having confidential information about the company disclosed by Banisch. The court recognizes that the agreement imposes a significant restraint on Banisch, but it does not prevent him from working in the chemical industry all together. Thus, this Court finds that B&R is likely to prevail in this litigation, and that, on balance, the risk of irreparable injury to B&R from denying the preliminary injunction exceeds the risk of irreparable injury to Banisch from granting the requested relief.
ORDER
For the reasons stated above, Borden & Remington’s motion for a preliminary injunction is ALLOWED. It is hereby ORDERED that Banisch is preliminarily enjoined for a period of five years from the date of the Employment Agreement from:
(1) using or disclosing Borden & Remington’s confidential information and/or trade secrets,
(2) engaging directly or indirectly in chemical business dealings as described in Section 9(c) and 9(e) of the Employment Agreement, and
(3) representing himself as or in any way acting or holding himself out as an agent, employee, servant, or related entity or affiliate of Borden & Remington with respect to Borden & Remington customers, prospective customers, suppliers, prospective suppliers, or any other person or entity.