Burnes, J.
This action is before this Court on the plaintiff, Stone Legal Resources Group, Inc.’s (“Stone Legal”), request for a preliminary injunction. Stone Legal argues that a former employee, Martin R. Glebus, Jr. (“Glebus”), violated the terms of a non-compete and confidentiality provision within an Employment Agreement (“Agreement”), signed by Glebus while employed at Stone Legal. Stone Legal requests that this Court enjoin Glebus from improperly competing with Stone Legal, from soliciting Stone Legal’s clients, professionals, candidates, and employees, and from using and disclosing Stone Legal’s confidential and proprietary business information. Stone Legal also requests this Court to enjoin defendant, All Pro Personnel, Inc., d/b/a Advance Legal Placement (“Advance”), from using the confidential and proprietary business information that Glebus has allegedly misappropriated and from tortiously interfering with the Agreement. For the following reasons Stone Legal’s Motion for a Preliminary Injunction is ALLOWED, in a limited form.
BACKGROUND
The facts were gathered from Stone Legal’s verified complaint and the parties’ supporting affidavits. Stone Legal has an office located in Boston and is engaged in the business of recruiting and placing lawyers, paralegals, legal secretaries, legal assistants, and *739 other personnel on a temporary and permanent basis throughout New England. Stone Legal has been in the legal placement business for approximately 20 years. Advance is a recent start-up company located in Boston and is also engaged in the business of recruiting and placing legal personnel in the New England area.
Stone Legal hired Glebus on or about August 19, 1999, as a business development employee. Prior to working for Stone Legal, Glebus worked as a salesperson for IKON copying services and had no prior experience in the staffing industry. When Glebus was hired, he received training and was tutored by Stone Legal’s management personnel in the legal recruiting and placement fields. Glebus later became a placement consultant, handling both recruiting and sales functions for Stone Legal. In January 2002, Glebus was promoted to the position of manager. While employed with Stone Legal, Glebus was responsible for building and developing client relationships, and earning commissions for placements with Stone Legal’s clients. On or about September 6, 2002, Glebus voluntarily resigned from Stone Legal. Shortly thereafter, Glebus began working for Advance.
At the beginning of his employment with Stone Legal, Glebus signed an Agreement, and in consideration for his employment and training by Stone Legal, and Stone Legal’s entrustment to him of confidential and proprietary information, Glebus agreed to be bound by non-competition, non-solicitation, anti-raiding, and non-disclosure covenants. The Agreement specifically contained non-competition and confidentiality provisions. The Agreement’s non-competition provision provides:
NON-COMPETITION AGREEMENT. During the period of employment and for eighteen months thereafter, the Employee will not, directly or indirectly, engage in (or own an interest in any entity which engages in) activities in competition with the business of the Company, namely providing (i) temporary and permanent attorneys, paralegals, legal assistants, legal administrative or other personnel and/or (ii) consulting services to law firms or corporate legal departments within a radius of one hundred miles of any office(s) and/or area(s) to which the Employee was assigned and/or managed for the Company. For the same eighteen-month period, the Employee will not solicit, provide services to or attempt to solicit or provide services to the Company’s current customers at the Employee’s termination, customers for whom the Company has provided services within eighteen months prior to the date of termination of employment, and prospective customers at the time of the Employee’s termination . . .
In addition, the confidentiality provision in the Agreement provides:
PRESERVATION OF CONFIDENTIAL INFORMATION. Employee agrees that, during and after his employment by the Company, he will not use any Confidential Information[1] for himself or others or disclose or communicate any Confidential Information to any third party for any purpose whatsoever without the Company’s express prior written consent . . .
For the purposes of Glebus’ position in building and developing client relationships, he had access to confidential and proprietary business information through Stone Legal’s computer database. This information included client data such as contact names, e-mail addresses, telephone numbers, methods of job pricing, and fee information. The database also contained names of individuals who had been interviewed and approved for potential placement. This information included names, addresses, telephone numbers, e-mail addresses, specialties, professional references, and resumes. Stone Legal opened the database to all employees and encouraged employees to freely share information.
Stone Legal alleges that, since Glebus began employment with Advance he has been directly soliciting Stone Legal’s Clients, specifically: (1) Davis, Malm and D’Agostine, (2) Butters, Brazilian and Small, (3) Corporate Communications Broadcast Network (“CCBN”), (4) Choate, Hall and Stewart, (5) Edwards and Angelí, and (6) Gilmartin, Magence & Ross, PC. The evidence before this Court reflects that Advance had no prior placements with either Butters, Brazilian and Small, or CCBN but that Advance did have prior placements with Davis, Malm, and D’Agostine, Choate, Hall and Stewart, Edwards and Angelí, and Gilmartin, Magence & Ross. While Glebus was employed with Stone Legal, he worked with Peter Clark (“Clark”), the hiring contact at Butters, Brazilian and Small. In or about late September 2002, Glebus contacted Clark and solicited business from Butters, Brazilian and Small on behalf of Advance. Also, while Glebus was employed with Stone Legal, he had contacts with a company, CCBN, and upon leaving Stone Legal, contacted CCBN on behalf of Advance, and placed Julian S. Jordan as a contractor from mid-October through mid-November 2002.
On November 14, 2002, Stone Legal filed a Verified Complaint against Glebus and Advance. On December 5, 2002, Stone Legal filed this Motion for Preliminary Injunction.
DISCUSSION
To obtain a preliminary injunction, Stone Legal must satisfy a threefold inquiry showing that the moving party: (1) has a reasonable likelihood of success on the merits; (2) will suffer irreparable harm if the injunction is not granted; and (3) the harm it will suffer if the injunction is denied outweighs the injuries the non-moving party will suffer if the injunction is granted. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
*740 I. Likelihood of Success on the Merits
An employer may enforce the terms of a non-competition agreement with a former employee when it demonstrates that the agreement: (a) is necessary to protect a legitimate business interest of the employer; (b) is supported by consideration; (c) is reasonably limited in all circumstances including time and space; and (d) is otherwise consonant with public policy. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 102-03 (1979). See also Blackwell v. E.M. Helides, Jr., Inc., 368 Mass. 225, 228 (1979); All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974).
A. Necessary to Protect a Legitimate Business Interest
1. Goodwill
Massachusetts courts have held that restrictive covenants may protect legitimate business interests including goodwill. See New England Canteen Service, Inc. v. Ashley, 372 Mass. 671, 674 (1977). However, there is not a legitimate business interest when the purpose of a restrictive covenant is to protect the employer from ordinary competition. See Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 287-88 (1974). Goodwill has been defined as “the employer’s positive reputation in the eyes of its customers or potential customers . . . [and] is generated by repeat business with existing customers or by referrals to potential customers.” Bowne of Boston, Inc., v. Levine, No. 97-5789A, 1997 WL 781444, at *3 (Mass.Super. 1997) (Burnes, J.) (7 Mass. L. Rptr. 685), citing Marine Contractors Co, Inc., 365 Mass. at 287-89.
Stone Legal asserts that its goodwill will be damaged if Glebus, while an employee of Advance, is allowed to continue contacting his former clients from Stone Legal. Stone Legal argues that Massachusetts courts have enjoined former employees in similar situations on the basis of goodwill. See e.g., All Stainless, Inc., 364 Mass. at 777 (“the goodwill of All Stainless could be harmed by a former salesman’s calling on an All Stainless customer, with whom he had previously dealt, to solicit purchases on behalf of a new employer”); Darwin Partners, Inc. v. Signature Consultants, LLC, No. 00-0277, 2000 WL 33159238, at *4 (Mass.Super. 2000) (Burnes, J.) (“Soliciting a potential client company whose relationship has been developed by the individual defendants, while under the employ of [the former employer], certainly would constitute an invasion of [the former employer’s] good will”).
This Court concludes that Glebus’ position at Stone Legal allowed him to develop relationships and contacts with Stone Legal’s clients. Prior to joining Stone Legal, not only did Glebus lack contacts, but he also had no placement experience. These relationships developed only at Stone Legal would be beneficial for a start-up company such as Advance, and would be a great disadvantage to Stone Legal if Glebus were to use his contacts to deflect business from Stone Legal to Advance. Therefore, Stone Legal’s goodwill needs to be protected; however, this protection is limited.
Stone Legal relies upon three Superior Court cases for the proposition that when an employee leaves one employer and begins working for a competitive employer, a broad restriction is appropriate because of the competitive nature of the recruiting industry. See Darwin Partners, Inc., 2000 WL 33159238, at *3-4. See also Modis, Inc. v. The Revolution Group, Ltd., No. 99-1104, 1999 WL 1441918 (Mass.Super. 1999) (Welch, J.) (11 Mass. L. Rptr. 246); Bowne of Boston, Inc., 1997 WL 781444, 7 Mass. L. Rptr. 685. However, these cases are distinguishable from the matter before this Court. In this case, Advance had already established relationships with some of the firms prior to Glebus’ employment with Advance.[2] Therefore, Stone Legal will only be protected to the extent of the harm Glebus, individually, could inflict upon it. Thus, Glebus will be enjoined from utilizing contacts he personally established while at Stone Legal. Additionally, Advance is enjoined from using Glebus’ contacts in attempting to place, or placing individuals with firms with which it previously had no active business relations.
2. Confidentiality Provision
Along with goodwill, courts have also recognized a legitimate business interest in confidential and proprietaiy information. See New England Canteen Service, Inc., 372 Mass. at 674. Confidential information consists of a “compilation of information which is used in one’s business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.” J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 736 (1970). See also Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 840 (1972) (outlining six factors which are relevant to the court’s determination of whether information is confidential).
Stone Legal has taken reasonable steps to ensure that its clients’ information remains confidential. The company informs its employees about the confidentiality provision and each employee agrees and signs a provision stating that they will not disclose confidential information. The fact that other companies can obtain this information independently, and Stone Legal employees discuss freely the information, does not diminish the fact that this information is confidential, and any disclosure is a breach of the confidentiality provision. See Darwin, 2000 WL 33159238, at *4 (‘The fact that certain Darwin company clients are well known corporations . . . does not diminish the fact that this constitutes confidential information . . .”). Thus, Stone Legal is entitled to protect its confidential information.
B. Consideration
A non-competition provision is enforceable if there is consideration. See Marine Contractors Co., Inc., 365 Mass. at 287. When a non-competition provision is *741 signed at the beginning of employment there is sufficient consideration. See Slade Gorton & Co. v. O’Neil, 355 Mass. 4, 9 (1968). It is clear that the non-competition provision signed by Glebus at the beginning of his employment on August 19, 1999, was supported by consideration because he signed the Agreement in exchange for employment. Advance contends that the Agreement between Glebus and Stone Legal became void when Stone Legal altered Glebus’ salary and commission structure. The Agreement, however, is not dependent on a set salary or commission, and further, the Agreement does not guarantee a set salary or commission.[3] Therefore, this Court concludes that sufficient consideration exists and the non-competition provision is enforceable.
C. Reasonableness in All Circumstances, Including Time and Space
Restrictive covenants will be enforced if the terms are reasonable. All Stainless, Inc., 364 Mass. at 778. In determining whether the time limit is reasonable, this Court will “consider the nature of the business and the character of the employment involved, as well as the situation of the parties, the necessity of the restriction for the protection of the employer’s business and the right of the employee to work and earn a livelihood.” Richmond Bros., Inc. v. Westinghouse Broadcasting Co., Inc., 357 Mass. 106, 109 (1970).
Considering these factors, this Court concludes that the eighteen-month restriction is not unreasonable. Stone Legal trained Glebus and entrusted him with all of its client information. In such a competitive area, Glebus could apply his knowledge of the confidential information and infringe on Stone Legal’s goodwill. Furthermore, courts have held that durations longer than eighteen months are reasonable. See e.g., All Stainless, Inc., 364 Mass. at 779 (two years); Frank D. Layne Assoc. v. Lussier, 16 Mass.App.Ct. 986, 989 (1983) (two years); Middlesex Neurological Assoc., Inc. v. Cohen, 3 Mass.App.Ct. 126, 131 (1975) (two years). Therefore, the eighteen-month restriction is reasonable.
This Court also concludes that the geographic restriction is reasonable.[4] The non-competition provision signed by Glebus, restricted his employment to a 100-mile radius around Boston. This is reasonable because it “restricts a former employee from doing business in an area in which the company itself conducts business.” Marcam Corp. v. Orchard, 885 F.Sup. 294, 299 (D.Mass. 1995). Here, Glebus worked at Stone Legal’s Boston office and obtained confidential information on clients who use that office. Pursuant to and without violating the Agreement, Glebus can continue to work in the legal placement field, as long as he is 100 miles from Boston. Thus, he is not prevented from working in the placement and recruiting industry.
D. Public Policy
A restrictive covenant is also enforceable if it does not obstruct public interest. See Whitinsville Plaza, Inc., 378 Mass. at 102-03. This Agreement does not obstruct public interest since it is reasonable in scope and is supported by adequate consideration. Furthermore, Stone Legal trained Glebus and provided him with confidential information. The legal placement industry is competitive and, if this information is used to improve Advance’s situation in the industry, it would adversely affect Stone Legal’s goodwill.
II. Irreparable Harm
Stone Legal will suffer irreparable harm if it loses “rights that cannot be vindicated should it prevail after a full hearing on the merits.” Planned Parenthood League of MA, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). In this matter, the principal issue is whether Stone Legal’s loss of goodwill was a result of Giebus’ alleged breach of the Agreement. The Agreement specifically states that “disclosure of Confidential Information is likely to cause irreparable injuiy... to the Company.” Moreover, in Massachusetts, “the loss of goodwill has been recognized as being particularly hard to quantify, giving rise to the need for equitable relief.” Bowne, at *5, citing Kroeger v. Stop & Shop Companies, Inc., 13 Mass.App.Ct. 310, 322 (1982). Therefore, because Stone Legal has demonstrated a loss of goodwill, it has established irreparable harm.
III. Balance of the Harm
Lastly, the balance of the harm weighs in favor of Stone Legal. Stone Legal has demonstrated that enforcement of the Agreement will prevent irreparable harm. Stone Legal is likely to establish that Advance and Glebus have been using confidential information to acquire contacts that were made while at Stone Legal. Furthermore, enforcement of the Agreement will not infringe on Glebus’ right to work and earn a livelihood. See Marine Contractors Co., Inc., 365 Mass. at 289 (“The consequences of every covenant not to compete ... is that the covenantor is deprived of a possible means of earning his living, within a defined area and for a limited time. That fact alone does not make such covenants unenforceable . . . [Glebus must] establish . . . extraordinary hardship.”). Since Stone Legal has not requested this Court to enforce the geographic scope of the Agreement, Glebus may maintain his position at Advance and is only limited to whom he may contact. Thus, Glebus and Advance will not suffer any substantial harm from the issuing of the injunction.
ORDER
For the reasons stated above, it is hereby ORDERED that, for fifteen months (three months have passed since Glebus resigned from Stone Legal), from the date of entry of this injunction, Advance and Glebus are preliminary enjoined as follows:
*742 1. Advance and Glebus are enjoined forthwith to return to Stone Legal any and all information of Stone Legal taken or received from Stone Legal in any manner, whatsoever, including, without limitation, lists and records of customers, clients, professionals and candidates, preferred vendor pricing information and materials that Stone Legal or its clients provided to Glebus.
2. Advance and Glebus, are enjoined, on behalf of themselves or in the service or on behalf of others, from divulging to any other person or entity, or use on behalf of themselves or in the service or on behalf of others, any of Stone Legal’s confidential information, including, but not limited to, pricing information, billing history, lists or compilations of customers, professionals and candidates; information regarding Stone Legal’s methods of operation, and information which Stone Legal or its clients provided to Glebus.
3. Advance and Glebus are enjoined to terminate any business obtained by Advance which was derived from the confidential information of Stone Legal, where Advance had never previously attempted to or actually provided placements to that client.
4. Advance and Glebus are enjoined from soliciting further business through confidential information obtained by Stone Legal.
5. Advance and Glebus are enjoined to terminate business relations with (1) Butters, Brazilian and Small, and (2) CCBN.

 Confidential Information as defined by Stone Legal consisted of “lists and resumes of candidates and consultants (placed, active and inactive), lists of customers who have listed job orders from customers and financial information of the Company.”

Stone Legal alleges that Advance has solicited and hired its employees prior to Glebus. However, if Stone Legal wanted to protect its interest regarding these employees, it should have brought an action earlier.

The Agreement specifically provides, “[i]n consideration and as part of the terms of the employment of the Employee by the Company, the compensation paid and to be paid by the Company to the Employee and the Company’s entrusting to the Employee of Certain of the Company’s trade secrets acknowledged, the Employee and the Company agree as follows: . . .”

Stone Legal is not seeking to enjoin Glebus from working in the placement industry and has not asked this Court to order a geographic restriction. This Court is only discussing the geographic restriction to support its conclusion that the non-competition provision is valid and enforceable.