MARINE CONTRACTORS CO., INC. *vs.* THOMAS F. HURLEY.

Suffolk.    February 8, 1974. — May 8, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Contract,* Consideraton, Under seal, Covenant against competition,
Validity.    *Equity Jurisdiction,* Specific performance, Covenant
against competition.

A contract reciting that the parties "set their hands and seals" was a
sealed instrument under G. L. c. 4, § 9A. [285, n. 2]
Where it appeared that an employee of a corporation was a participant in
its "employee retirement plan and trust," of which the principal
officer of the corporation was the trustee, that upon the employee's
notifying the officer-trustee of his intention to leave the employ of the
corporation the officer-trustee offered to pay the employee imme-
diately his vested share of the trust, which otherwise, under the terms
of the trust, would not have been available to the employee for five

years, in return for a promise by the employee not to compete with the corporation, and that the employee accepted the offer and the parties entered into a contract under seal containing such a promise by the employee, it was held that there was consideration for the promise adequate to support a decree for specific performance thereof in a suit in equity by the corporation against the former employee. [285-286]

Where it appeared that a long time employee of a corporation engaged in specialized marine repair work in an area including Boston and one hundred miles therefrom, upon leaving the employ of the corporation, covenanted for adequate consideration not to compete with it in such area for five years, it was held that the covenant did not constitute an unreasonable restraint of trade, did not tend to create a monopoly, did not impose an undue hardship on the former employee, was ancillary to his employment and reasonably designed to protect the corporation's legitimate business interests, was warrantably found reasonable in space, and was enforceable in a suit in equity by the corporation against the former employee for less than three of the five years specified in the covenant by a decree entered after a lapse of more than two of the years during which the former employee had been actively competing with the corporation. [287-290]

BILL IN EQUITY filed in the Superior Court on September 17, 1971.

The suit was heard by *J. P. Sullivan,* J., on a master's report.

*Mary F. Fitzgerald* for the defendant.

*William F. Looney (Lawrence J. Hock* with him) for the plaintiff.

TAURO, C.J. The plaintiff, Marine Contractors Co., Inc. (Marine), seeks to enjoin the defendant, Thomas F. Hurley (Hurley), from competing with Marine in the business of marine specialist until March 31, 1976, within 100 miles of Boston, in accordance with a written agreement executed by the parties on April 1, 1971. Hurley appeals from a final decree granting Marine the injunctive relief sought.

The case was referred to a master, who conducted a hearing and submitted a report. On objection by Hurley to the report the case was recommitted to the master for summaries of certain portions of the evidence and for the inclusion in the report of a copy of the "Employee Retirement Plan and Trust." After the inclusion of this evidence,

a second motion by Hurley to recommit the case to the master was denied. The judge confirmed the master's report and entered a final decree as stated above, from which Hurley appeals.[1] There was no error.

We are bound by the master's subsidiary findings of fact unless they are plainly wrong or mutually inconsistent, and we must determine only whether the final decree is supported by those facts found by the master and proper inferences therefrom. *Rose* v. *Homsey*, 347 Mass. 259, 260 (1964). See *Minot* v. *Minot*, 319 Mass. 253 (1946); *White* v. *White*, 346 Mass. 76 (1963).

We summarize the facts as found by the master. Since 1946, Marine has been engaged in the business of performing various specialized types of marine repair work, principally in the greater Boston area but as far away as Newport, Rhode Island, and Portland, Maine (each of which is within approximately 100 miles of Boston). Marine is one of a very few companies in the greater Boston area which engages primarily in such specialized repair work, although there are shipyards which compete for such work. Marine conducts its business by retaining only two or three permanent supervisors and by hiring crews of part time workers as necessary for particular jobs. It relies on the ability of its supervisors to assemble workers with the particular skills which are needed for each job.

In 1958, Marine created an "Employee Retirement Plan and Trust" (the trust) for the benefit of its permanent employees. The sole trustee of the trust, Norman C. Thomas (Thomas), is also the president, treasurer, sole stockholder and a director of Marine. The trust agreement provides for annual contributions by Marine to the trust based on the company's net income. All questions con-

---

[1] Hurley also appealed from the denial of his motion to recommit the case for a second time to the master for a more accurate summary of the evidence and from the interlocutory decree confirming the master's report. We need not consider these issues, however, because Hurley did not argue them in his brief. S.J.C. Rule 1:13, 351 Mass. 738. Moreover, during oral argument Hurley expressly waived any challenge to the adequacy of either the master's report or the summary of evidence.

cerning construction of the trust agreement, including those involving the powers and duties of the trustee, are to be decided by an administrative committee appointed by Marine. Funds accumulated under the trust accrue solely to the benefit of the participants, and can never revert to or be used for the benefit of Marine. As to distribution of benefits, the trust agreement provides in relevant part that when a participant leaves the employ of the company for reasons other than disability or retirement at age sixty-five, then an amount equal to his vested share of the trust is required to be segregated into a separate savings account and held by the trustee for a five-year period. Only after the expiration of the five-year period may the trustee distribute those benefits (plus accumulated interest) to the participant. The purpose of the waiting period, as stated in the trust agreement, is to "encourage all employees to become and remain Participants in the . . . [trust]."

Hurley was a permanent employee of Marine from 1963 until April 1, 1971. He was the general superintendent of the business, and his duties included estimating and preparing bids, in addition to the supervision of ongoing work. As a result of this employment Hurley became skilled in marine contracting both as a field supervisor and as an estimator and bidder. As a permanent employee Hurley was a participant in the trust, and by 1971 his vested share amounted to approximately $12,000. Sometime in March, 1971, Hurley notified Thomas of his plan to leave Marine's employ as of April 1 in order to return to his hometown of Stewartstown, New Hampshire. Thomas offered to make immediate payment to Hurley of his vested share of the trust in return for Hurley's promise not to compete with Marine. Hurley agreed to this proposal. On April 1, Hurley and Marine (represented by Thomas) signed an "Agreement Not to Compete" in which Hurley, "in consideration of ONE DOLLAR ($1.00) and other good and valuable consideration," promised not to compete with Marine, directly or indirectly, within 100 miles of Boston for five years. On the same date Hurley received the full amount of his share in the trust.

Starting in August, 1971, Hurley began to perform marine work similar to the work of Marine. The jobs he performed were within 100 miles of Boston and at least some were performed for customers known by Hurley to be customers of Marine. During this time counsel for Marine put Hurley on notice that he was violating the agreement not to compete. Hurley responded that he did not intend to comply with the terms of that agreement. In January, 1972, Hurley formed his own corporation to undertake the work which he had been doing as an individual. By that time the other two key supervisory employees who had been working for Marine as of April 1, 1971, had quit Marine and were working for Hurley. Owing to the loss of the services of Hurley and other key employees, Marine was unable to bid on or accept much work until April, 1972. Between August, 1971, and June 5, 1972 (the date on which the hearing before the master began), Hurley earned more that $24,000 from business done in violation of the agreement not to compete.

Marine filed its suit in September, 1971, and the injunction issued on June 5, 1973. By the terms of the injunction Hurley is barred until March 31, 1976, from engaging in the business of general maritime specialist, within 100 miles of Boston, either individually, as a member of a firm, or as a stockholder in a corporation, or a certificate holder in a business trust.

Although Hurley urges several grounds for vacating the injunction, his principal arguments are two: first, that there was no sufficient consideration to support his promise not to compete; and second, that his agreement with Marine constitutes an "unreasonable restraint of trade" as defined in the Restatement: Contracts, § 515 (1932). We disagree for the reasons stated below, and we hold that Hurley was properly enjoined from violating the terms of his agreement not to compete.

We consider first the question of consideration. The master found that the requirement of consideration was satisfied in two respects. First, because the agreement was,

in legal effect, a sealed instrument,[2] no consideration was necessary to make it a binding contract. Second, the acceleration by five years of the payment to Hurley of his $12,074.64 trust share amounted to consideration in fact.

As to the effect of a sealed instrument, Hurley concedes that the rule at law is that consideration is conclusively presumed for a promise under seal. *Kaplan* v. *Suher*, 254 Mass. 180, 182 (1926). He argues, however, that that rule should not be applied in a suit for specific performance, which is addressed to the sound discretion of the court. See *Economy Grocery Stores Corp.* v. *McMenamy*, 290 Mass. 549, 552 (1935). Hurley cites Restatement: Contracts, § 366 (1932), to the effect that a "contract that is binding solely by reason of its being under seal . . . or having a nominal consideration will not be specifically enforced, unless some performance constituting a fair exchange is a condition of the defendant's duty." See Corbin, Contracts, § 252 (1963). The short answer to this argument, however, is that the rule of the Restatement is not the law of Massachusetts. "The principal defendants contend that their guaranties are void because of lack of consideration, and that in equity, despite a recital of consideration in a sealed instrument, actual consideration or lack of it may be determined. These contentions are without merit." *Lawrence H. Oppenheim Co.* v. *Bloom*, 325 Mass. 301, 302 (1950). The rule that consideration is unnecessary when an instrument is under seal has been applied in both actions at law and suits in equity. See *Western R.R.* v. *Babcock*, 6 Met. 346, 353 (1843); *Morad* v. *Silva*, 331 Mass. 94, 98 (1954).[3]

Apart from the seal we hold that the five-year acceleration of the trust benefit payment to Hurley was sufficient consideration to support specific performance of his prom-

---

[2] The agreement contained a recitation that the parties thereto have "set their hands and seals." This language is sufficient to give the agreement the effect of a sealed instrument. G. L. c. 4, § 9A.

[3] We should not be taken to imply that the seal would of itself render a purely gratuitous promise specifically enforceable.

ise not to compete. The requirement of consideration is. satisfied if there is either a benefit to the promisor or a detriment to the promisee. Williston, Contracts (3d ed.) § 102 (1957). See *Cottage St. Methodist Episcopal Church v. Kendall,* 121 Mass. 528, 529-530 (1877); *Graphic Arts Finishers, Inc.* v. *Boston Redevelopment Authy.* 357 Mass. 40, 42-43 (1970). Having the use of more than $12,000 five years earlier than it would otherwise have been available was a substantial benefit to Hurley, especially in light of his expressed intention to start his own business in his home-town in New Hampshire. Hurley argues that, while the accelerated payment might have been a benefit to him, it was no detriment to Marine since the money was paid not by Marine but by the trust from funds in which Marine had no beneficial interest whatsoever. But, as was said in *Palmer Sav. Bank* v. *Insurance Co. of No. America,* 166 Mass. 189, 196 (1896), "[I]t is not in all cases necessary that the consideration should move from the promisee to the promisor." It was held in that case that a mortgagee may sue in its own name on an insurance policy which is payable to the mortgagee even though the premiums on the policy are paid by the mortgagor. See *Cabot* v. *Haskins,* 3 Pick. 83, 92 (1825); *Spooner* v. *Spooner,* 155 Mass. 52 (1891); *Crosier* v. *Crosier,* 215 Mass. 535 (1913). The leading authorities on the law of contracts all reject the notion that consideration to support a promise must flow only from the promisee. Restatement: Contracts, § 75 (2) (1932). Corbin, Con-tracts, § 124 (1963). Williston, Contracts (3d ed.) § 114 (1957). We conclude that the receipt by Hurley of his trust benefits, five years before he was due to receive them, constituted adequate consideration for his promise not to compete with Marine.[4]

---

[4] Hurley also argues against specific enforcement of his promise on the ground that acceleration by the trustee of the benefit payment constituted a breach of the trustee's fiduciary duty in that it was done for a purpose (i.e., to induce the promise not to compete) that was not in the best interests of the participant (i.e., Hurley). If there was a breach of fiduciary duty, a question we do not decide, Hurley clearly was aware of it and benefited by it. Thus he cannot complain. "If a beneficiary consents to an act by the trustee which would constitute a breach of

Hurley's second principal argument is that his agreement not to compete with Marine amounts to an unreasonable restraint of trade (Restatement: Contracts, § 515 [1932][5]), and thus should not be enforced in equity. While it is true that agreements not to compete will be enforced only in so far as they are reasonable, *All Stainless,Inc.* v. *Colby,* 364 Mass. 773, 778 (1974), and cases cited, what is reasonable depends on the facts of each case. *Novelty Bias Binding Co.* v. *Shevrin,* 342 Mass. 714, 716 (1961), and cases cited. We do not believe that the facts of this case require the conclusion that the agreement not to compete between Hurley and Marine constitutes an unreasonable restraint of trade.

In the first place, Hurley argues that, since his promise was not made until the termination of his employment with Marine, the agreement was unreasonable because not "ancillary" to his employment with Marine. Restatement: Contracts, § 515 (e) (1932). This argument misconstrues, we think, the purpose underlying the Restatement rule. Employee covenants not to compete generally are enforceable only to the extent that they are necessary to protect the legitimate business interests of the employer. *Novelty Bias Binding Co.* v. *Shevrin, supra,* at 716. Such legitimate business interests might include trade secrets, other confidential information, or, particularly relevant here, the good will the employer has acquired through dealings with his customers. See *All Stainless, Inc.* v. *Colby, supra,* at 779-780. Protection of the employer from ordinary com-

---

trust toward the beneficiary, the beneficiary cannot hold the trustee liable for the consequences of the trustee's acts 'if the beneficiary was sui juris and had full knowledge of all relevant facts and of his legal rights and if his consent was not induced by any improper conduct of the trustee.' " *Reynolds* v. *Remick,* 333 Mass. 1, 10 (1955), quoting from Scott, Trusts, § 216 (1939).

[5] Those portions of § 515 relied on by Hurley are: "A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it ...
    (b) imposes undue hardship upon the person restricted, or
    (c) tends to create, or has for its purpose to create, a monopoly ...
    (e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of goodwill or other subject of property or to an existing employment or contract of employment."

petition, however, is not a legitimate business interest, and a covenant not to compete designed solely for that purpose will not be enforced. *Richmond Bros. Inc.* v. *Westinghouse Bdcst. Co. Inc.* 357 Mass. 106, 111 (1970). The Restatement rule which declares unreasonable any noncompetition agreement not ancillary to an employment contract is principally aimed at forestalling the use of covenants which have as their sole purpose the protection of the covenantee from ordinary competition. This purpose is exemplified by the "illustration" of § 515 (e) given in the Restatement, wherein A, about to begin a business in competition with B, is paid $5,000 by B (with whom A has had no prior relationship) in consideration of A's promise not to compete with B. The case now before us is quite different, since Hurley was indeed a long time employee of Marine. Marine's interest in protecting its accrued good will from possible incursions by Hurley is not weakened by the fact that it negotiated the agreement not to compete at the end of Hurley's employment rather than at some earlier time. That Marine's concern for its good will was justified is evidenced by the master's findings that Hurley has been performing work for firms which are both past and current customers of Marine. We have previously upheld a decree enforcing a post-employment covenant. *Novelty Bias Binding Co.* v. *Shevrin*, 342 Mass. 714 (1961) (former employee's agreement not to compete given as partial restitution for funds embezzled from employer). See *Richmond Bros. Inc.* v. *Westinghouse Bdcst. Co. Inc.* 357 Mass. 106 (1970) (involving a covenant not to compete, declared unenforceable on other grounds, which was signed by an employee after he had announced his intention to quit but ten weeks prior to the actual severance date). We hold that Hurley's agreement not to compete was "ancillary" to his employment with Marine and was reasonably designed to protect the legitimate business interests of the latter.

We may more quickly dispose of Hurley's other two arguments based on § 515 of the Restatement. First, there is nothing in the master's findings which would require a conclusion that the noncompetition agreement between

Hurley and Marine would tend to create a monopoly ( § 515 [c] ). The master found that Marine was "one of one or two companies" performing its type of specialized marine repair work in the Boston area, and that it received competition from shipyards in the area. Second, Hurley argues that the agreement imposes an "undue hardship" ( § 515 [b]) by barring him from earning his living in the marine contracting business, the business he knows best. The consequence of every covenant not to compete, however, is that the covenantor is deprived of a possible means of earning his living, within a defined area and for a limited time. That fact alone does not make such covenants unenforceable. Hurley has not established any extraordinary hardship which would be caused him by the enforcement of his promise not to compete. He may engage in any work other than marine repair work. Until April, 1976, if he wishes to perform marine repair work he may do so anywhere other than within 100 miles of Boston. Hurley freely entered into the agreement not to compete, see *New England Tree Expert Co. Inc.* v. *Russell,* 306 Mass. 504, 509 (1940), and there is no evidence of any subsequent change in circumstances which might cause him unanticipated hardship.

Finally, although Hurley did not expressly argue the points, we believe the master's finding that Hurley's agreement not to compete with Marine was reasonable in time and space was warranted. The geographical scope of the agreement coincides with the area in which Marine performs almost all of its work, and thus is precisely drawn to protect Marine's good will. See *Boston & Suburban Laundry Co.* v. *O'Reilly,* 253 Mass. 94, 98 (1925); *Walker Coal & Ice Co.* v. *Westerman,* 263 Mass. 235, 239 (1928); *Walker Coal & Ice Co.* v. *Love,* 273 Mass. 564, 566-567 (1931); *New England Tree Expert Co. Inc.* v. *Russell,* 306 Mass. 504 (1940); *All Stainless, Inc.* v. *Colby,* 364 Mass. 773, 780 (1974). The original five-year duration of the agreement might be somewhat troublesome. Compare *Walker Coal & Ice Co.* v. *Love, supra,* and *Becker College of Business Admn. & Secretarial Science* v. *Gross,* 281 Mass.

355 (1933), with *Richmond Bros. Inc.* v. *Westinghouse Bdcst. Co. Inc.* 357 Mass. 106 (1970). However, the decree granting specific performance did not issue until more than two of the five years had elapsed (during which time Hurley was actively engaged in the marine repair business in the Boston area). Thus, Hurley will in fact be barred for less than three years from competing with Marine. In the circumstances we believe that such a period of time is not excessive or unreasonable. See *Sherman* v. *Pfefferkorn*, 241 Mass. 468 (1922); *Chandler, Gardner & Williams, Inc.* v. *Reynolds*, 250 Mass. 309 (1924); *New England Tree Expert Co. Inc.* v. *Russell*, 306 Mass. 504 (1940); *Novelty Bias Binding Co.* v. *Shevrin*, 342 Mass. 714 (1961).

*Interlocutory and final decrees affirmed.*