Houston, J.
Plaintiff Philips Electronics North America Corp., doing business as Philips Speech Processing North America (“Philips”), seeks a preliminary injunction restraining defendant Judith N. Halperin (“Halperin”) from violating the terms of a Restrictive Covenant and Employment Agreement (“Employment Agreement”) and Separation Agreement executed by the parties. Philips alleges that Halperin violated the terms of the Employment and Separation Agreements by accepting a position with defendant Speech Works International, Inc. (“Speech Works”) subsequent to being laid off by Philips. For the following reasons, Philip’s motion for preliminary injunction is ALLOWED.
BACKGROUND
On or about May 13, 1996, Halperin, who holds bachelors’ degrees in Computer Science and Computational Linguistics, as well as a master’s degree in Computer Science, commenced employment with Voice Processing Corporation (“VPC”) as a Vocabulary Development Engineer at its Cambridge, Massachusetts facility. VPC is a predecessor-in-interest to Philips. Philips is a provider of speech recognition software. In consideration for her employment with VPC, Halperin entered into the Employment Agreement, which she executed in Massachusetts on October 21, 1996. Among the terms of the Employment agreement is a two year non-competition clause. The Employment Agreement provides in relevant part:
1. You [Halperin] agree that both during and after your employment with Voice Processing that you will not use or disclose to anyone outside of Voice Processing any confidential information of the Company . . . Confidential information includes all trade secrets, research, business, financial and product secrets, research, business, financial and product information and all other proprietary information of the Company . . .
5. You agree that if you leave the Company for any reason, then for a period of two years after you leave the Company you will not deal with, solicit business from, or perform services for any actual or prospective clients, customers or suppliers of the Company in any manner which would hinder or harm the business of the Company. In addition, Jot that period you agree not to enter or engage in competition with the Company in the development, deployment, sales or marketing of speech recognition technology in the United States either as an individual on your own, or as a partner or joint venturer, or as an employee, consultant, agent, officer or director for any other person or entity, or otherwise.
(Emphasis added.)
Halperin continued to work for VPC and its successors-in-interest (including Philips) for almost four years. While working at Philips, Halperin acquired knowledge of Philips’ confidential and proprietary information relating to its speech recognition technology, customer accounts, and marketing strategies.
On July 31, 2000, Philips closed its Cambridge, Massachusetts operation and consolidated with its Dallas, Texas headquarters. As a result of the consolidation, Halperin was offered the opportunity to relocate to Dallas. Halperin rejected the offer of relocation and was instead provided with a separation package by Philips. Under the Separation Agreement with Philips, Halperin again agreed to maintain the confidentiality of Philips’ proprietary information, and reaffirmed the Employment Agreement she signed on October 21, 1996. The Separation Agreement provides in relevant part:
3. It is stipulated and agreed that all information, contained or possessed by you relative to the activities of . . . [Philips] . . . which is of a secret or confidential nature, which may include but is not limited to customers’ lists, pricing, and technical and production knowhow, developments, inventions, processes, or administrative procedures, is the property of . . . [Philips] . . . and you shall not during the term of this agreement or thereafter, use for the benefit of others or disclose to others such information so long as its secret or confidential nature be preserved by . . . [Philips]. . .
4. Ms. Halperin . . . agrees to abide by the terms of the Restrictive Covenant and Employment Agreement dated October 21, 1996.
On October 25, 2000, Halperin accepted employment at Speech Works, a direct competitor of Philips in the voice recognition technology field. On November *12 15, 2000, however, Halperin’s employment was terminated by Speech Works when it was served with this lawsuit.
Philips contends that Halperin violated the terms of the non-competition clause contained in the Employment Agreement and reaffirmed in the Separation Agreement when she accepted employment with SpeechWorks, and that despite the fact that Halperin was terminated by SpeechWorks, an injunction is necessary to require Halperin to abide by the Employment and Separation Agreements. Conversely, Halperin contends that injunctive relief is inappropriate because the Employment and Separation Agreements do not bind her, considering the fact that she did not voluntarily quit her position at Philips, but was laid off. Halperin also contends that injunctive relief is inappropriate because the non-competition clause is unenforceable.
DISCUSSION
To obtain preliminary injunctive relief, Philips must satisfy a fourfold inquiry: (1) that it has a reasonable likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is not granted; (3) that the harm Philips will suffer if the injunction is denied outweighs the injury Halperin will suffer if the injunction is granted; and (4) that the public interest will not be adversely affected by the granting of the injunction. See Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
Applying these principles, we find that Philips has met its burden as to all four required elements and that an injunction should issue.
I. Likelihood of Success on the Merits
As a threshold matter, Halperin contends that the terms of the non-competition clause do not bind her because she did not quit, but was laid off. The clause states that if Halperin “leavels] the Company for any reason,” she will be prohibited from working for a competitor for two years. In essence, Halperin contends that she did not leave the company, but that the company left her.
We do not think Halperin’s interpretation is likely to prevail because it contradicts the language of the Separation Agreement. “It is a canon of construction that every word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible.” Tupper v. Hancock, 319 Mass. 105, 109 (1946). Since the Separation Agreement explicitly states that Halperin was to abide by the terms of the Employment Agreement, which included the non-competition clause, and the Separation Agreement was entered into with the knowledge that Halperin was severing her employment with Philips, it is illogical to construe the non-competition clause as inapplicable to Halperin because she was laid off. Accepting Halperin’s interpretation of the non-competition clause would render meaningless the portion of the Separation Agreement that reaffirms the Employment Agreement. Accordingly, Halperin’s contention that the non-competition clause does not bind her is unlikely to prevail.
We now turn to Halperin’s contention that Philips is unlikely to succeed on the merits because the non-competition clause is unreasonable. Massachusetts courts enforce the terms of a non-competition agreement with a former employee when the company demonstrates that it (1) is necessary to protect a legitimate business interest of the employer, (2) is supported by consideration, (3) is reasonably limited in all circumstances, including time and geographic scope, and (4) is otherwise consonant with public policy. See Bowne of Boston, Inc. v. Levine, 7 Mass.L.Rptr. 685, 687, Civil No 97-5789A (Suffolk Super.Ct. Nov. 25, 1997) (citing Whittinsville Plaza v. Kotseas, 378 Mass. 85, 102-03 (1962)).
In this case, Philips has a reasonable likelihood of success on the merits because the Employment and Separation Agreements appear to be enforceable. First, Philips has demonstrated that the non-competition clause is necessary to protect a legitimate business interest. Massachusetts courts have recognized as legitimate business interests an employer’s protection of its goodwill, trade-secrets, and other confidential information. See Marine Contractors Co., Inc., v. Hurley, 365 Mass. 280, 287 (1974). Here, the Employment and Separation Agreements protect Philips’ product development, customer information, and marketing strategies through a confidentiality clause and a two-year non-competition clause. None of this information, according to Philips’ verified complaint, is generally known outside of the company. Thus, by definition, protection of this information serves a legitimate business interest.
Second, the Employment and Separation Agreements appear to be supported by adequate consideration. The requirement of consideration is satisfied where there is either a benefit to the promisor or a detriment to the promisee. See Marine Contractors, 365 Mass. at 286. Here, Halperin was compensated for the performance of her duties, thus the Employment Agreement is supported by consideration. The Separation Agreement is also supported by consideration because Halperin was provided eleven weeks salary as severance pay.
Third, it is likely Philips will prove that the terms of the Employment and Separation Agreements are. reasonable. “A covenant not to compete contained in a contract for personal services will be enforced if it is reasonable, based on all the circumstances.” All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974). “If the covenant is too broad in time, in space or in any other respect, it will be enforced only to the extent that is reasonable ...” Id. Here, there is nothing in the record for the court to conclude that the non-competition *13 clause is unreasonable. Indeed, the non-competition clause appears to be a reasonable attempt by Philips to protect its sensitive information from national competitors such as Speech Works. As to the two-year duration. “Massachusetts courts have consistently enforced covenants of up to two years, even as great as five years duration, if they are otherwise reasonable under the circumstances.” Bowne of Boston, 7 Mass. L. Rptr. at 687 (citing All Stainless, 364 Mass. at 779; Richmond Bros., 357 Mass. 106, 110-11 (1970)). Furthermore, as to the geographic scope of the clause covering the entire United States, this too appears reasonable considering that Halperin is only barred from working in the narrow field of voice recognition software technology. Thus, under the circumstances, the terms of the Employment and Separation Agreements do no appear to be over broad.
Finally, the public interest will be served by granting injunctive relief. “It is in society’s best interest to recognize and enforce agreements which were voluntarily entered into and accepted. Allowing an individual to disregard such a promise would result in behavior which should not be condoned or encouraged.” New England Circuit Sales, Inc. v. Randall, 1996 WL 1171929 *3 (D.Mass. June 4, 1996). See also Shipley Company v. Kozlowski, 926 F.Supp. 28, 30 (D.Mass. 1996) (granting injunctive relief because “[i]t is in society’s best interest to recognize and enforce agreements which were voluntarily entered into and accepted”). In this case, the public interest will best be served by requiring Halperin to abide by the terms of the Employment and Separation Agreements which she executed.
II. Irreparable Harm
In order for Philips to obtain injunctive relief, Philips must show that it is “likely to suffer irreparable injury before a decision is rendered on the merits.” Sierra Club v. Larson, 769 F.Supp. 420, 422 (D.Mass. 1991). Philips must establish "injury that is not remote or speculative, but is actual and imminent.” Id. “An injunction will not be issued to prevent the possibility of some remote future injury; a presently existing actual threat must be shown.” Id.
Originally, Philips brought this motion for injunctive relief against not only Halperin, but Speech Works as well, a competitor of Philips that hired Halperin subsequent to her being laid off. Philips, however, has dropped its request for injunctive relief against SpeechWorks because when Speech Works was served with this action, SpeechWorks terminated Halperin’s employment.
Hence, Halperin contends that because she no longer works for SpeechWorks, Philips cannot show actual, imminent injury necessary to support the issuance of a preliminary injunction. Halperin, in essence, contends that her termination by SpeechWorks rendered Philips’ motion seeking injunctive relief moot.
Contrary to Halperin’s contention, we find that Philips’ motion is not moot and that Philips has shown the requisite imminent injury necessary to warrant injunctive relief. Although Halperin’s employment has been terminated by SpeechWorks, Halperin’s acceptance of employment with Speech Works along with her contention that she is not bound the Employment and Separation Agreements reveal that she is unlikely to abide by the terms of the parties’ agreements. Thus, despite the fact that Halperin no longer works for SpeechWorks, Philips has shown imminent injury. This result is similar to situations where courts have refused to hold a case moot based on a defendant's voluntary cessation of allegedly wrongful conduct. See, e.g., Wolf v. Commissioner of Public Welfare, 367 Mass. 293, 299 (1975) (holding that in order to establish mootness in a case where the defendant has voluntarily ceased his allegedly wrongful conduct, “a defendant bears a heavy burden of showing that there is no reasonable expectation that the wrong will be repeated”). Although in this instance Halperin’s employment with Speech Works was not terminated voluntarily, it is clear from the record that there is a very real danger that Halperin will seek employment with a competitor. Accordingly, Philips should not have to wait until the damage sought to be prevented in the parties’ Employment and Separation Agreements is done in order to obtain injunctive relief.
III. Balance of Harms
The balancing of harms in this case tilts in favor of Philips. The inquiry concerning the balancing of the harms should not focus on the “raw amount of irreparable harm” each party might suffer, “but rather the risk of such harm in light of the party’s chance of success on the merits.” Packaging Indus. Group, 380 Mass. at 617. Here, Philips will be irreparably harmed by the disclosure of its confidential and proprietary information, its loss of customer goodwill, and loss of revenue. Conversely, Halperin has not established any extraordinary or unanticipated hardship which would preclude injunctive relief. In Marine Contractors, the Supreme Judicial Court upheld a covenant barring a defendant from engaging in marine repair work for five years, noting that:
The consequences of every covenant not to compete ... is that the covenantor is deprived of a possible means of earning his living, within a defined area and for a limited time. That fact alone does not make such covenants unenforceable. [The defendant] has not established any extraordinary hardship which would be caused by him by the enforcement of his promise not to compete . . . [The defendant] freely entered into the agreement not to compete . . . and there is no evidence of any subsequent change in circumstances which might cause him unanticipated hardship.
365 Mass. at 288 (emphasis added). Although Halperin may suffer harm by not being able to work *14 in the field of voice recognition technology for two years, this alone is insufficient to render a non-competition clause unenforceable. Extraordinary or unanticipated hardship has not been shown. See Marine Contractors, 365 Mass. at 288. Therefore, balancing the risk of harm to each party in light of each party’s likelihood of success on the merits, the court finds that Philips will suffer more harm if the injunction is not granted.
IV. Public Interest
As discussed earlier,[2] the public interest is best served by enforcing the Employment and Separation Agreements that were, from all indications in the record, voluntarily entered into and accepted. Therefore, having met all the requisite elements, Philips is entitled to injunctive relief.
ORDER
For the reasons stated above, plaintiffs motion for preliminary injunction is ALLOWED. It is hereby ORDERED that:
1. Defendant Judith N. Halperin and all persons acting for or on her behalf, is hereby temporarily enjoined from taking, receiving, divulging, transferring, copying or otherwise using confidential and proprietary information belonging to Philips;
2. Defendant Halperin is hereby temporarily enjoined, for a period of two (2) years following the termination of her employment (i.e., until July 31, 2002), from directly or indirectly, in any capacity whatsoever, entering or engaging in competition with Philips in the development, deployment, sales or marketing of speech recognition technology in the United States either as an individual, or as a partner or joint venturer, or as an employee, consultant, agent, officer, or director for any other person or entity, or otherwise; and
3. Defendant Halperin, and all persons acting for or on her behalf or in concert with her, is temporarily enjoined, for a period of two (2) years following the termination of her employment (i.e., until July 31, 2002), from soliciting business from, or performing services for any actual or prospective clients, customers or suppliers of Philips in any manner which would hinder or harm the business of Philips.

 See supra.