**ELIZABETH GRADY FACE FIRST, INC., Plaintiff,**

**v.**

**Tanya ESCAVICH, Defendant.**

**No. CIV.A. 3:04CV769(SRU).**

United States District Court, D. Connecticut.

June 14, 2004.

Derek T. Werner, Hugh F. Murray, III, Murtha Cullina LLP, Hartford, CT, for Plaintiff.

Louis W. Flynn, Jr., Hartford, CT, for Defendant.

### RULING ON MOTION FOR PRELIMINARY INJUNCTION

UNDERHILL, District Judge.

Elizabeth Grady Face First, Inc. ("Elizabeth Grady") sued Tanya Escavich ("Escavich"), one of its former employees, for breach of a covenant not to compete. Elizabeth Grady now seeks a preliminary injunction to prevent Escavich from working for a competitor in the West Hartford area. On May 21, 2004, this court heard evidence on the merits of Elizabeth Grady's motion. For the reasons set forth in this opinion, a preliminary injunction substantially similar to the one requested by Elizabeth Grady will issue.

### I. Facts

Based on the evidence presented at the May 21, 2004 hearing, I find the following facts.

In January 2002, Escavich was laid off from her job as director of marketing communications at Emhart Glass Manufacturing Inc. Rather than seeking a similar position with a different company, Escavich decided to pursue a career as an esthetician. Escavich applied for positions at various salons, including Elizabeth Grady, an established skin-care business based in Massachusetts with an office in West Hartford, Connecticut. After interviewing Escavich in both Massachusetts and West Hartford, Elizabeth Grady offered her a position as esthetician in its West Hartford

branch. Escavich accepted, and, on March 30, 2002, signed an employment agreement ("the Employment Agreement").

The Employment Agreement contained the following provisions relevant to the instant dispute: (1) a clause prohibiting Escavich from directly or indirectly competing with Elizabeth Grady for a period of one year within a radius of twenty-five miles from the West Hartford branch (the "Non–Compete Clause"); (2) a clause prohibiting Escavich, for one year, from attempting to solicit the business of any person who was a customer of Elizabeth Grady, or who had been solicited by Elizabeth Grady, during the time Escavich was employed by Elizabeth Grady (the "Non–Solicitation Clause"); and (3) a clause prohibiting Escavich from disclosing any confidential information belonging to Elizabeth Grady, including customer lists ("the Non–Disclosure Clause"). In addition the Employment Agreement specified that it was governed by the laws of Massachusetts.

Shortly after signing the Employment Agreement, Escavich attended—at Elizabeth Grady's expense—training at Elizabeth Grady's school in Massachusetts, followed by a period of time during which she "shadowed" an esthetician in one of Elizabeth Grady's salons in Massachusetts. She then began her work at the West Hartford salon.

Escavich met with success as an esthetician and was, at some point, promoted to the position of Esthetics Supervisor. Nevertheless, after a time, she became dissatisfied with the "corporate" attitude of Elizabeth Grady. In late 2003, she discussed with a friend of hers the possibility of going to work at Nelson—The Spa ("Nelson"), another West Hartford salon only a few blocks from Elizabeth Grady's salon.

Around this time—the 2003 holiday season—Escavich began compiling a list of customers who had given her Christmas gifts. She entered the names and addresses of these people into a label-making program on her computer and then used the program to generate labels to put on thank-you notes and holiday cards. Escavich continued to add customers to this list until March 2004.

On April 2, 2004, Escavich left her job at Elizabeth Grady and accepted a position at Nelson. A few weeks after starting at Nelson, Escavich converted the names and addresses in her mailing label program into an Excel spreadsheet, printed out that spreadsheet, and gave it to her manager at Nelson. Nelson then sent out a mailing to all the customers on the list declaring, "We are happy to announce that Tanya Escavich, formerly of Elizabeth Grady, has joined our staff, and is ready to meet your skin care needs."

While working at Nelson, Escavich provided skin care to a number of people who had been her clients at Elizabeth Grady.

On May 7, 2004, Elizabeth Grady sued Escavich and sought, among other things, a temporary restraining order. On May 11, 2004, after hearing from counsel for both parties, I issued a Temporary Restraining Order prohibiting Escavich from servicing or soliciting customers of Elizabeth Grady within a 25 mile radius of the West Hartford salon and from disclosing confidential information of Elizabeth Grady's. The Temporary Restraining Order did not require her to cease working at Nelson. That Order is still in effect.

In its motion for preliminary injunction, however, Elizabeth Grady seeks to enforce more of the Employment Agreement. Specifically, it seeks, in addition to the restrictions contained in the Temporary Restraining Order, to: (1) prohibit Escavich from working at Nelson; (2) prohibit her from competing with, or working for

any competitor of, Elizabeth Grady; and (3) prohibit her from soliciting any person who was an Elizabeth Grady customer when Escavich worked there.

## II. Discussion

### A. *Choice of Law*

 As a preliminary matter, Escavich argues that, despite the language of the Employment Agreement providing that the agreement should be governed by Massachusetts law, Connecticut law applies. Under section 187 of the Restatement (Second) Conflict of Laws—which has been adopted by Connecticut, *see Elgar v. Elgar*, 238 Conn. 839, 850, 679 A.2d 937 (1996)—a contract's choice of law provision will be ignored if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." Massachusetts, Escavich contends, has no substantial relationship to the parties or the transaction at issue. She is incorrect. Elizabeth Grady is incorporated, and has its principal place of business, in Massachusetts. That alone is sufficient to justify the choice of law. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS, § 187, cmt. f. Moreover, Escavich interviewed and was trained in Massachusetts. There is no question that these facts give rise to a substantial relationship between the parties and Massachusetts. Massachusetts law, therefore, applies.

### B. *Standard for Issuing a Preliminary Injunction*

 A party seeking a preliminary injunction must show that: (1) it is likely to suffer irreparable injury if the injunction is not granted and (2) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Reuters Ltd. v. United Press Intern., Inc.*, 903 F.2d 904, 907 (2d Cir.1990).

### C. *Irreparable Harm*

The parties do not dispute the issue of irreparable harm. Escavich has already serviced the same customers she serviced at Elizabeth Grady. If not enjoined, she is likely to continue to solicit and service Elizabeth Grady's customers and to aid her employer in doing so as well. She has also disclosed customer lists to her employer and may do so in the future. Those things are likely to diminish Elizabeth Grady's existing customer base and decrease its goodwill. Such damage cannot be repaired with money. *Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438, 444–45 (2d Cir.1977) (party's "ample evidence" of threatened loss of goodwill and customers supported finding of irreparable harm that could not be rectified by money damages).

### D. *Likelihood of Success on the Merits*

#### 1. *Breach*

 Escavich argues that she is not in breach of contract because she does not actually compete with Elizabeth Grady. Her argument is that she is now a "holistic esthetician," using organic products when providing skin-care services. Elizabeth Grady, by contrast, is in the field of traditional esthetics, using conventional products. This argument is unpersuasive. Nelson—Escavich's current employer—solicited and serviced former Elizabeth Grady customers. Escavich herself testified that customers would be unlikely to seek skin-care at both places. The fact that Escavich now offers "holistic" services shows nothing more than that she provides her skin-care services in a different man-

ner than Elizabeth Grady. The service that she ultimately supplies, however, is the same one Elizabeth Grady provides—skin-care. Accordingly, I find it beyond doubt that Escavich and her employer, Nelson, compete directly with Elizabeth Grady.

Given that Nelson is in competition with Elizabeth Grady, there is no dispute that Escavich has not complied with the terms of the agreement. Only a few weeks after leaving Elizabeth Grady she took a position with a competitor located only a few blocks from the Elizabeth Grady salon in West Hartford. The work she performs is substantially the same as the work she performed at Elizabeth Grady. Moreover, Escavich has disclosed the names and addresses of Elizabeth Grady customers to her employer, has aided in the solicitation of those customers, and has provided those customers with skin-care services.

### E. Validity of the Contract

■ Escavich argues that, even if she is not in compliance with the terms of the Employment Agreement, the agreement is no longer valid because her promotion to Esthetics Supervisor created a new contract superceding the Employment Agreement. In support of this argument, Escavich relies on the cases of *F.A. Bartlett Tree Expert Co. v. Barrington*, 353 Mass. 585, 233 N.E.2d 756 (1968), and *AFC Cable Systems, Inc. v. Clisham*, 62 F.Supp.2d 167 (1999)—cases in which a change in employment status was deemed to have voided a prior non-compete agreement. She contends that, like the employees in

those cases, her change in employment status created a new agreement that did not contain any non-competition provisions.[1]

Escavich's interpretation of *Bartlett* and *AFC Cable* is too broad. Neither case holds that *any* subsequent change in employment status voids prior contracts. Those cases stand for nothing more than the unremarkable proposition that contracting parties are free to abandon their prior contracts and form new ones, and an intention to do so may be evidenced not only by words or writing but also by the parties' conduct. In both cases there was an abundance of evidence presented to show that the new position involved a fundamental change in the underlying agreement, indicating the creation of a new contract. In *Bartlett* the court found that the parties intended to create a new contract when a salesman, whose contract specified his area and rate of pay, was given a new area, rate of pay and title. *Bartlett*, 353 Mass. at 588, 233 N.E.2d 756. In *AFC Cable*, the court found that a promotion that effectively changed an employee from a contractor to a permanent employee, coupled with the fact that the employer repeatedly tried to get the promoted employee to sign a new non-compete agreement, evidenced the parties' intention to create a new contract. *AFC Cable*, 62 F.Supp.2d at 173.

In Escavich's case, there is simply no evidence of any intent by the parties to alter—let alone abandon—any of the terms of the Employment Agreement. The agreement mentions nothing about

---

**1.** Escavich also argues that her employment status changed at the end of her first year when she was absolved of responsibility for the costs of her training. This argument is entirely without merit. Upon commencing employment, Escavich signed a separate contract in which, in return for training, she agreed to reimburse Elizabeth Grady for the

cost of the training should she leave the company within twelve months. This training agreement was entirely separate from the Employment Agreement, and so, although that contract certainly ended at the conclusion of the twelve-month period, that fact has no bearing on the validity of the Employment Agreement.

wages or position, and so, was not in any way made obsolete by a promotion. Neither is there any evidence that Escavich performed a materially different function on account of her promotion; both before and after the promotion, she provided skin-care services to the customers of Elizabeth Grady. Accordingly, there is no ground for finding that the parties ever intended to abandon or replace the Employment Agreement.

### F. Reasonableness of the Contract

Escavich next contends that, even if the Employment Agreement is still in effect, its non-competition provisions are unreasonable in scope and so either should not be enforced or should be modified. Specifically, she contends that: (1) the twenty-five mile radius is unreasonable, (2) the Non–Solicitation Provision is too broad because it applies to *all* Elizabeth Grady customers regardless of which salon they patronize; and (3) the Non–Competition Provision is too broad because it prevents her from doing *any* work for a competitor regardless of what work she performs for that entity.

"[I]t has been long settled in this Commonwealth [of Massachusetts] that a covenant inserted in a contract for personal service restricting trade or competition or freedom of employment is not invalid and may be enforced in equity provided it is necessary for the protection of the employer, is reasonably limited in time and space, and is consonant with the public interest." *Avallone v. Elizabeth Arden Sales Corp.,* 344 Mass. 556, 561–62, 183 N.E.2d 496 (1962). An employer may legitimately protect its goodwill, including its investment in established customers. *All Stainless, Inc. v. Colby,* 364 Mass. 773, 779–80,

308 N.E.2d 481 (1974). An employer may not attempt to restrain ordinary competition. *Id.* at 779, 308 N.E.2d 481.

#### 1. Twenty-five Mile Radius

■ Escavich argues that the twenty-five mile radius is unreasonable because it encompasses 3/4 of the land mass of the State of Connecticut, including "virtually all" the communities capable of supporting a skin-care business. The first contention, even if true[2], is not very helpful. That an area of approximately 1693 square miles may cover a significant portion of Connecticut is simply the result of Connecticut's size; in and of itself, it says nothing about the reasonableness of the restriction.

The second contention—that the twenty-five mile radius includes almost all areas in Connecticut that could support a skin-care business—is not supported by the evidence. The evidence at trial demonstrated that West Hartford was the only place *within the twenty-five mile radius* that could support such a business. If anything this supports the reasonableness of the chosen area because it means that, as a practical matter, this restriction is no more onerous than a restriction prohibiting competition only within the West Hartford town limits. Moreover, this fact indicates that a twenty-five mile radius accurately captures the market serviced by Elizabeth Grady and thus is precisely drawn to protect its goodwill. *See Marine Contractors Co., Inc. v. Hurley,* 365 Mass. 280, 289, 310 N.E.2d 915 (1974) (geographical scope consisting of area within 100 miles of Boston was "perfectly drawn" because it coincided with area serviced).

Not only is Escavich's claim that no other area in Connecticut will support a

---

**2.** Escavich's estimate is exaggerated. Connecticut is approximately 5,000 square miles (*see* http://www.ct.gov/ctpor-

tal/cwp/view.asp?a=843 & q=246434), making the area in question approximately a third of the total land mass of Connecticut.

skin-care business unsupported, it is also unbelievable. The entire coast of Connecticut—which includes the populous cities of New Haven, Stamford, New London and Norwich as well as the affluent towns of Greenwich, Darien, Westport and Southport—is outside the prohibited region.

Accordingly, I conclude that the twenty-five mile radius covers a range of territory reasonably necessary for the protection of Elizabeth Grady's goodwill and its investment in its customers.

### 2. *Non–Solicitation Provision*

■ Escavich's argument concerning the reasonableness of the Non–Solicitation Provision has some merit. The Employment Agreement would prohibit Escavich from contacting any Elizabeth Grady customers even if they had never had any contact with Escavich, never frequented the West Hartford salon, or never been to Connecticut. This prohibition is much broader then is reasonably necessary to protect Elizabeth Grady. Escavich never worked in any other branch and never had any relationship with any customers other than the West Hartford branch's customers. There is, consequently, no danger to Elizabeth Grady, other than the danger present in any fairly competitive business, if Escavich is allowed to contact customers who frequent Elizabeth Grady salons other than the West Hartford salon. *See National Hearing Aid Centers, Inc. v. Avers,* 2 Mass.App.Ct. 285, 291, 311 N.E.2d 573 (1974) (holding threat to goodwill posed by ordinary competition may not be restrained).

Escavich goes further and argues that it is unreasonable for her to be prohibited from soliciting anyone who was not *her* customer, even if such person was a customer of the West Hartford salon. This restriction would be too narrow. It is quite possible Escavich had contact with people who were not her customers but who frequented the West Hartford salon. It is also possible that such customers knew her by reputation, even if she did not actually service them. It is not, therefore, unreasonable for Elizabeth Grady to see Escavich as posing a legitimate threat to its investment in all its West Hartford customers. *See, e.g., All Stainless,* 364 Mass. at 781 & n. 3, 308 N.E.2d 481 (concluding that practical considerations militate against limiting non-solicitation agreement to only customers actually serviced by employee); *cf. Blackwell v. E.M. Helides, Jr., Inc.,* 368 Mass. 225, 229, 331 N.E.2d 54 (1975) (real-estate salesman could be restrained from soliciting individuals who had not sold properties through employer when it was possible that salesman had contact with such individuals even though their property was ultimately not listed).

Consequently, as permitted by Massachusetts law, *see All Stainless,* 364 Mass. at 778, 308 N.E.2d 481 (covenants not to compete enforced to the extent reasonable), I will enforce the Non–Solicitation Provision of the Employment Agreement only to the extent it applies to customers of the West Hartford branch of Elizabeth Grady.

### 3. *Non–Competition Provision*

■ Escavich points to three aspects of the Non–Competition Provision of the Employment Agreement that she contends make it unreasonable. First, she argues it is unreasonable to prohibit her from working for any competitor. This, Escavich claims, would make it a violation for her to work for a competitor who competed in some area in which goodwill and repeat customers were not relevant, such as in the sale of beauty products. Second, she argues that it is unreasonable to prohibit her from working in *any* capacity, because

this prevents her from working for a competitor even if she performs services she never performed at Elizabeth Grady. Third, she argues, it is unreasonable for her to be prohibited from working for a competitor in a field that Elizabeth Grady was only contemplating entering at the time Escavich worked there. This prohibition, Escavich contends, could prevent her from working in an unrelated field merely because, unbeknownst to her, Elizabeth Grady had contemplated competing in that field.

I start by noting that Escavich's violation of the Employment Agreement is not one encompassed by any of the hypothetical situations she has put forth. She works for a company that competes directly with Elizabeth Grady; she works in the same capacity as when she was at Elizabeth Grady; and she works in the market that is, and has been, Elizabeth Grady's primary focus.

I also note that, in the circumstances of this case, none of the provisions are, in general, unreasonable. *See Marine Contractors,* 365 Mass. at 288, 310 N.E.2d 915 (reasonableness to be determined according to the facts of each case). It is reasonable given the nature of Elizabeth Grady's customer-driven business for it to fear that in general its competitors are competing against it for goodwill and established customers. It is also reasonable for Elizabeth Grady to be concerned that an employee with extensive relationships with many Elizabeth Grady customers might be in a position to threaten Elizabeth Grady if she worked for a competitor, regardless of the nominal title or duties she assumed. Finally, it is reasonable for Elizabeth Grady to attempt to prevent a former employee

from benefiting a competitor by using that employee's knowledge about markets in which Elizabeth Grady is likely to expand and the methods it intends to employ.

Given that the Employment Agreement's application to Escavich's current actions is not unreasonable and that the terms of the agreement are not on their face unreasonable, Escavich's hypothetical situations at best only demonstrate that the Employment Agreement may be somewhat ambiguous. It may be that the parties did not intend that Escavich be prohibited from competing in a business that competes with only a small part of Elizabeth Grady's business and is not likely to diminish Elizabeth Grady's goodwill. It may also be that the Employment Agreement would not cover competition in some new market that Elizabeth Grady has chosen to pursue that is entirely unrelated to skin-care and of which Escavich had no knowledge. Those ambiguities, if they exist, are not before the court. The Employment Agreement is unambiguous in prohibiting the work Escavich is currently doing, and that prohibition is not unreasonable. Should Elizabeth Grady in the future attempt to enforce a less straightforward reading of the Employment Agreement—or of this court's injunction—then Escavich will not be barred from seeking relief.[3] As it stands, her arguments do not persuade me that she is not in violation of the Employment Agreement or that the Employment Agreement—with the limited exception noted—is unreasonable.

### III. Conclusion

Because I conclude that Elizabeth Grady has demonstrated irreparable harm and

---

3. Should contract ambiguity become an issue, any ambiguity is likely to be strictly construed against Elizabeth Grady as the drafter. *See Sentry Ins. v. Firntein,* 14 Mass.App.Ct. 706,

707, 442 N.E.2d 46 (1982) (noting that non-compete contracts are "scrutinized with particular care" because of the probability of unequal bargaining positions).

likelihood of success on the merits, a preliminary injunction is warranted. The Temporary Restraining Order in this case has already granted Elizabeth Grady most of the relief it seeks, and so the preliminary injunction shall run no longer than one year from the date that Order went into effect. Additionally, under the circumstances of the case, I find no bond is necessary.

Elizabeth Grady's Motion for Preliminary Injunction (doc. # 7) is GRANTED. The terms of the injunction will be set forth in a separate order.

It is so ordered.