Murtagh, Thomas R., J.
The plaintiff, A.R.S. Services, Inc. (“ARS”) filed this five-count Verified Complaint against the defendants David Baker (“Baker”) and Francis Harvey Remodeling, LLC (“Harvey Remodeling”) alleging breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with advantageous relations against Baker, and tortious interference with contractual and advantageous relations, and violations of G.L.c. 93A against Harvey Remodeling. Currently before this Court is ARS’s Motion for Preliminaiy Injunction in which it seeks to enforce provisions of an Employee Nondisclosure, Noncompetition and Nonsolicitation Agreement (“the Agreement”) signed by its former employee, Baker. After reviewing the parties’ submissions and the relevant law, ARS’s Motion for Preliminary Injunction is ALLOWED.
BACKGROUND
ARS is a Massachusetts corporation that provides emergency disaster restoration and reconstruction services for residential and commercial properties. These services include fire, smoke, and water damage restoration, loss mitigation, and mold remediation. ARS’s principal place of business is located in Newton, Massachusetts. ARS, however, has additional offices in Worcester and Springfield, Massachusetts; Hudson, New Hampshire; Pawtucket, Rhode Island; and North Haven, Connecticut.
From February 1, 2006 until November 2, 2011, Baker was employed by ARS initially as a Branch Manger and than as a Project Manger. As Project Manager Baker had a significant role within ARS’s sales department. Part of Baker’s responsibilities included “building, developing and growing business relationships with Customers and business contacts, including [insurance] adjusters, subcontractors, vendors and property mangers and owners!.]” Verified Complaint par. 5. Building and maintaining business relationships with customers — Insurance adjusters and property managers or owners — is essential because these are the individuals who generate ARS’s business by informing ARS of locations in need of restoration work. In an effort to foster these business relationships, ARS paid for Baker to entertain current and potential customers at sporting events, restaurants, and educational seminars. In furtherance of ARS’s business, ARS paid for Baker to obtain numerous certifications and attend specialized training seminars.
On May 25, 2007, Baker signed the Agreement. Pursuant to paragraph one of the Agreement, Baker agreed to return to ARS and not to use for a period of one year after his termination any “notes, memoranda, reports, lists (including without limitation lists of customers, clients, vendors, or subcontractors and any contact information included on such lists), records, drawings, sketches, specifications, data, documentation, systems, or other materials of any nature relating to any matter within the scope of the business of the Company [ARS] or concerning any of its dealings or affairs[.]” Verified Complaint, Ex. C. The Agreement includes a Noncompetition clause, which states “[d]uring the term of my employment with the Company and for one year thereafter, I will not, without the Company’s prior written consent, directly or indirectly, alone or as . . . [an] employee . . . engage in the field of disaster restoration, including without limitation emergency cleaning, within foriy (40) miles of any location in which the Company has an office at such time.” Verified Complaint, Ex. C, par. 3. Pursuant to the Nonsolicitation clause, Baker agreed that “during the term of [his] employment with the Company and for one year thereafter,” that he would not “(b) cause or solicit any customer or client of the Company to end or limit its business relationships with the Company . . . (c) cause or solicit any vendor or subcontractor of the Company to end or limit its business relations with the Company or to enter into business relationships with any entity or business which is directly or indi- *458 rectiy engaged in the field of disaster restoration, including without limitation emergency cleaning, in a manner that is in any way harmful or detrimental to the Company.” Verified Complaint, Ex. C, par. 4.
On November 2, 2011, Baker voluntarily resigned and terminated his employment with ARS. ARS’s President Rich Piltch (“Piltch”) asked Baker to return his ARS-issued laptop, credit card, and cellular phone. Baker immediately returned the laptop and credit card, but informed Piltch that the cellular phone was at his house and that he would return it the following day. When Baker returned the cellular phone the following day, the contact information — customers’ names and telephone numbers — had been erased from the device.
Shortly after Baker resigned from ARS, he began working as Sales Manager of Harvey Remodeling’s Restoration Division.[2] Affidavit of David Baker par. 2. Harvey Remodeling is a Massachusetts company located in Worcester, Massachusetts that provides remodeling services in central and eastern Massachusetts. In connection with his restoration work for Harvey Remodeling, Baker has contacted multiple independent insurance adjusters, i.e., customers, whom ARS regularly works with on restoration projects. Affidavit of Jim Trudeau pars. 4, 9; Affidavit of Peter Najarían pars. 4, 6. On behalf of Harvey Remodeling, Baker has solicited subcontractors ARS currently does business with, including Revolution Construction and New American Tree and Landscaping. Affidavit of Richard Piltch, par. 18.
On December 8, 2011, ARS’s attorney sent Baker a letter demanding that he resign from his position with Harvey Remodeling and “cease and desist from all activities in violation of the Noncompetition Agreement.” Verified Complaint, Ex. H. On that same day, ARS’s attorney sent a letter to Harvey Remodeling informing the company about the Agreement. On December 16, 2011, Baker sent Steve Bouzan, an ARS Project Manger, a text message stating “I believe tonight is your Xmass party. If it is tell Pman [Piltch] I was thinking of him and I will be closing on my first 100K in business tomorrow. I will call him myself when I hit 7 figures :)[.]” Affidavit of Steve Bouzan par. 5.
On January 10, 2012, ARS filed the Verified Complaint.
DISCUSSION
In order to obtain a preliminary injunction, ARS must show: (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that its harm, without the injunction, outweighs any harm to Baker and Harvey Remodeling from their being enjoined. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). In balancing these factors, what matters as to “each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. at 617.
ARS contends it has a substantial likelihood of success on the merits with respect to its claim that Baker breached the Agreement.[3] Specifically, ARS asserts Baker has breached the Agreement because he began working for a direct competitor immediately after resigning from his position with ARS and is working within forty miles of an ARS office, and he has solicited ARS’s customers, vendors, and subcontractors.[4]
I. Likelihood of Success on the Merits
“A covenant not to compete is enforceable only if it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with public interest.” Boulanger v. Dunkin’ Donuts, Inc., 442 Mass. 635, 639 (2004). See Marine Contrs. Co. v. Hurley, 365 Mass. 280, 287-89 (1974); All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974). As a general matter, good will and confidential business information are legitimate business interests that may properly be protected by a non-competition and nondisclosure agreement. See Marine Contrs. Co., 365 Mass. at 287; All Stainless, Inc., 364 Mass. at 779-80. Goodwill is a broad term, which at a minimum encompasses “[a]n employer’s positive reputation in the eyes of its customers or potential customers!.]” Sentient Jet, Inc. v. Lambert, 2002 WL 31957009 at *5 (Mass.Super. 2002) (van Gestel, J.) [15 Mass. L. Rptr. 500]. Protection from ordinary competition, however, is not a legitimate business interest. Marine Contrs. Co., 365 Mass. at 287-88.
As a Project Manager for ARS, Baker was responsible for developing and maintaining business relationships with ARS’s customers — Insurance adjusters and property managers and owners. In furtherance of developing and maintaining these relationships, ARS paid for Baker to entertain current and potential customers at sporting events, restaurants, and educational seminars. The business in which ARS and Harvey Remodeling are involved is highly competitive and a company’s success is dependent on the development of these customer relationships, because the customers inform the company of potential restoration projects. After Baker resigned from ARS, he contacted at least two independent insurance adjusters whom he had met and worked with while he was employed as a Project Manager with ARS. Affidavit of Jim Trudeau pars. 4, 9; Affidavit of Peter Najarian pars. 4-6. At this stage, ARS has shown that its good will with its customers may be harmed as a result of Baker’s employment within Harvey Remodeling’s Restoration Division. See All Stainless, Inc., 364 Mass. at 780 (good will may be harmed “because the former employee’s close association with the employer’s customers may cause those customers to associate the former employee, and not the employer, with [the products and *459 services provided] to the customer through the efforts of the former employee”).
The Agreement is reasonably limited in subj ect matter, time, and space. With respect to subject matter, the Agreement only prohibits Baker from working in the “field of disaster restoration, including without limitation emergency cleaning!.]” Verified Complaint, Ex. C. Cf. Edwards v. Athena Capital Advisors, Inc., 2007 WL 2840360 at *3-*4 (Mass.Super. 2008) (MacDonald, J.) [23 Mass. L. Rptr. 155] (subject matter of non-competition clause unreasonable because it prohibited employee from performing “any services, either as a consultant, employee, owner, investor, or otherwise, with or for any foreseeable business, product or service of the Company”). The one-year duration of the Agreement is reasonable. See Boulanger, 442 Mass. at 643 (two-year restriction reasonable): Marine Contrs. Co., Inc., 365 Mass. at 290 (two-year restriction not unreasonable): Novelty Bias Binding Co. v. Shevrin, 342 Mass. 714, 718 (1961) (three-year restriction reasonable). The Agreement’s prohibition from working within forty miles of any ARS office is reasonable. Baker’s office with Harvey Remodeling is located less than five miles from ARS’s Worcester office, therefore, the Agreement’s geographic scope comprises the very area where Baker formerly worked and is necessary to protect ARS’s good will. See Marine Contrs. Co., 365 Mass. at 289 (covenant not to compete covering area within 100 miles of Boston was reasonable).
The Agreement is consistent with the public interest. Although the Agreement limits Baker’s ability to provide restoration services within this geographic area for one year, there are numerous other individuals and companies capable of providing competent restoration services within this area.
Baker’s assertion that he is not bound by the Agreement because ARS materially breached the Agreement by directing him to engage in fraudulent acts involving moral turpitude is unpersuasive. Baker’s contention stems from his disagreement with Piltch regarding Baker’s original estimated cost to rebuild ahorne that was destroyed by a tornado. Baker originally estimated that it would cost $378,000.00 to rebuild the home. After discussing the matter with Piltch, however, Baker reluctantly reduced the estimated cost to $293,985.87. Baker alleges that Hitch’s conduct in. requesting a reduced estimate was improper. At this stage, Baker has presented insufficient evidence that ARS and Hitch were engaging in any fraudulent or illegal activify. Rather, Baker’s apparent disagreement with Hitch involves ARS’s attempt to minimize costs to maximize profits.
II. Irreparable Harm and Balancing of Harm
ARS has demonstrated that enforcement of the Agreement is necessary to prevent it from suffering irreparable harm. If Baker is allowed to continue to work as the Sales Manager for Harvey Remodeling’s Restoration Division, ARS faces the distinct possibility that it will lose its goodwill with customers and risk losing those customers to Harvey Remodeling. The record indicates that since Baker began working at Harvey Remodeling, he has already contacted two ARS customers — Trudeau and Najarían — and solicited two of ARS’s subcontractors — Revolution Construction and New American Tree and Landscaping.
This Court finds that the irreparable harm ARS is likely to suffer as a result of Baker’s and Harvey Remodeling’s conduct outweighs the risk of harm to Baker and Harvey Remodeling if enjoined from engaging in activities that violate the Agreement. Baker has been employed at Harvey Remodeling for a short period of time, approximately three and a half months, and as result, Harvey Remodeling has not invested a significant amount of time or money training Baker. More importantly, Baker has had minimal contact with and limited opportunities to develop business relationships with actual or potential Harvey Remodeling customers. Although Baker is prohibited from engaging in disaster restoration work for Harvey Remodeling, he can be employed within another division of the company. If Baker is intent on working in the disaster restoration field he may do so outside of the Agreement’s geographic area.
ORDER
For the above-mentioned reasons, A.R.S. Services, Inc.’s Motion for Preliminary Injunction is ALLOWED. It is further ORDERED that:
(1) David Baker is prohibited from engaging in the field of disaster restoration within forty (40) miles of any A.R.S. Services, Inc. office as an employee of Francis Harvey Remodeling, LLC.
(2) David Baker is restrained from contacting A.R.S. Services, Inc.’s subcontractors and vendors regarding work in the disaster restoration field.
(3) Francis Harvey Remodeling, LLC will report in writing to A.R.S. Services, Inc. within seven days of this Court’s Order on all new jobs Francis Harvey Remodeling, LLC has secured in the disaster restoration field with the assistance of David Baker.

ARS learned that Baker was working for Harvey Remodeling when Paul McDonagh, an independent insurance adjuster, found Baker’s business card and a Harvey Remodeling brochure at the site of a fire. Affidavit of Paul McDonagh par. 4.

Although ARS has pled other claims against Baker and Harvey Remodeling, this Court addresses only ARS’s breach of contract claim, i.e., the Agreement, because ARS is only entitled to a preliminaiy injunction if it establishes a likelihood of success on the merits of this claim.

Baker’s Memorandum in Opposition to Plaintiffs Motion for Preliminary Injunction does not contest the reasonableness of any aspect of the Agreement. Rather, Baker argues ARS is estopped from seeking specific performance of the Agreement because ARS directed Baker “to do acts in the course of his employment that involve moral turpitude, are fraudulent, against public policy, and illegal!.]” Plaintiffs Mem. at 3.